### Richmond.

EDMUNDS' ADM'R V. SCOTT AND ALS.

ELCAN'S ADM'R V. WATKINS AND ALS.

March 20, 1884.

1. EXECUTORS AND ADMINISTRATORS—*Legacies—Debts—Devastavit.*—
   The laws of this State require that all of decedent's debts and liabili-
   ties be paid out of his assets before payment of any legacies or be-
   quests, and his personal representatives who, without taking proper
   refunding bonds, pay the latter before the former shall have been paid
   are guilty of *devastavit,* and they and their sureties are liable to the
   unpaid creditors.

2. IDEM—*Sureties—Loss of slave property.*—It is settled doctrine that the
   fact that the property of the principal debtors consisted of slaves, the
   ownership wherein was destroyed by the late war, does not exonerate
   their sureties from liability.

3. IDEM—*Idem—Application of estate.*—Where testator charges his debts
   on his personalty only, the order of applying his estate to the pay-
   ment of his debts is : (1) Personalty at large; (2) residuary legacies;
   (3) general pecuniary legacies; (4) specific legacies; and lastly, real
   estate divised by will. And where the residuary legacy is bequeathed
   to the executor, and he takes and consumes it, leaving testator's debts
   unpaid, his sureties are liable for the amount thereof before real
   estate devised by will can be subjected. *Elliott* v. *Carter and als.,* 9
   Gratt. 549.

4. APPELLATE COURT—*Practice.*—Appellant must not only have been a
   party to, but must have been aggrieved by the decree complained of,
   else the appeal must be dismissed. *Little* v. *Bowen and als.,* 76 Va.
   724—*e. g.,* where administrator appeals from decree for the renting
   of his decedent's land.

Two appeals heard and submitted together; first, from
decree of circuit court of Charlotte county rendered March
30th, 1881, in the chancery causes of Scott and als. v. Wat-

kins and als., and of Elcan's Adm'r, &c. v. Watkins and als., which were consolidated; and second, from decree of said circuit court rendered September 22d, 1881, in said causes.

Opinion states the facts.

*O. G. Kean, J. R. Watkins, J. A. Jones, Wood Bouldin, Jr.,* for the appellants.

*W. W. Henry,* for the appellees.

FAUNTLEROY, J., delivered the opinion of the court.

The following state of facts appears from the records of these causes: Thomas E. Watkins, of the county of Charlotte, died in November, 1861, leaving his will, which was duly probated at the December term of the county court, 1861, of the said county, and at the same term of the said court, Joel Watkins, his brother, and Joel W. Marshall, his nephew, qualified as executors of his said will, giving their bond in the penalty of $100,000, with James P. Marshall, John F. Edmunds, and John P. Marshall as sureties. The estate of the testator, which came to the hands of the said executors, consisted of fifty-six slaves and other personalty, aggregating a value of $76,789.24. In addition, the testator left a tract of land, containing 1,723 acres, in the county of Charlotte, and a lot in Farmville, Virginia, of the aggregate value of $25,899.

By his will the testator directed, first, that all his just debts be promptly paid; secondly, he gave to his brother, Joel Watkins, (one of the executors) the whole of his landed property in Charlotte county, thirty-two slaves, and all debts which he, Joel Watkins, might be owing to the testator at his death; third, he gave seventeen slaves to James P. Marshall; fourth, he gave his sister, Mrs. Ann E. Read, $7,000 in money, his lot in Farmville, and six slaves,

placing the said property in the hands of Joel W. Marshall
(the other executor) as a trustee; fifth, he gave to his niece,
Betty, wife of John P. Marshall, a negro man.   He then
gave his nieces, Nannie and Ellen Morton, and to his
nephew, H. M. Harris, $1,000 each, and directed that after
the above legacies were paid the bonds and debts due him
should be equally divided between the said Joel Watkins
and James P. Marshall.   The residue of his estate, includ-
ing the crops, stock of all kinds, furniture, &c., he gave to
his said brother, Joel Watkins.

The testator owed very little as principal debtor; but he
died largely bound as security.   The executors paid nearly
all the testator's own debts within the first two years of
their administration; but they left unpaid all the debts
for which he was bound as surety, which amounted, on
September 1st, 1871, when an account of them was reported,
to $17,846.19.   At the death of the testator, in 1861, they
amounted to only about $11,000.   The executors, with a
knowledge of these debts, but believing that the principals
were solvent, and that their testator's estate would never
be called on to pay any part of them, proceeded to pay and
deliver the special legacies at once.   Within their first year
they collected $12,390.42, and paid the legacies to the Mor-
tons and Harris, amounting to $3,000, and the legacy to
Mrs. Read of $7,000, and, after paying some debts and
charges of administration, had left in their hands $1,223.52
—these two alone aggregating $11,223.52, a sum sufficient
to have paid off the entire liabilities of their testator's es-
tate.   In addition to these, Joel Watkins took possession
of, as his own, the residuary legacy left him, amounting to
$7,994.25; and, within the next year, he received in cash,
on his special legacy, $5,939.44.   Then he received, in
money and his bond, $9,468.76; and the executors turned
over to James P. Marshall his own bond to the testator, as
a part of his legacy, amounting to $6,952.79.

No refunding bonds were taken by the executors from these legatees.

Soon after the war a large number of claims were put in suit, and judgments obtained upon debts for which the testator was surety; and, in 1869, this suit of Scott and others v. Watkins' Executors, &c., was brought to enforce the collection of the said debts out of the estate of the testator, Thomas E. Watkins. In his answer to the bill, Joel Watkins says: "Your respondent and his co-executor went on to distribute the estate of their testator, as directed by his will, never supposing that any difficulty could arise from their so doing; the slaves bequeathed were delivered; many of the debts were collected in Confederate money, then the only currency in circulation, and paid out to the parties entitled. Your respondent then received the residuum given him; disposed of it as his own, and of all the estate and property given him by his brother; has nothing now left but the land lying in this county on which he resided at the time of his death."

In 1870, a bill was filed in the same court, by A. E. Elcan's administrator, a judgment creditor of the said Joel Watkins, to subject his real estate to the payment of the judgment against him. The two suits were consolidated and heard together. By a commissioner's report, the liens on the real estate of Joel Watkins were ascertained to be, as of September 1st, 1871, $30,585.65; and these embraced most of the debts established against the estate of his testator, Thos. E. Watkins, deceased.

In these suits large sales have been made of the real estate in the possession of Joel Watkins, and the proceeds applied, till, in 1881, the unsold real estate of Joel Watkins, including that derived from his brother, Thomas E. Watkins, his testator, was 1,027 acres, assessed at $7,162.00, and no one had been found who was willing to buy it at that price.

At that time the debts against the estate of Thomas E. Watkins, deceased, amounted to $23,325.22, as ascertained by a master commissioner's report. Joel Watkins was then dead, and his entire estate, in the hands of his administrator, was assessed at a valuation of $803.16, other than the land derived from his brother, and this subject to liens other than those for which Thomas E. Watkins was bound, so that only a small part of these assets could be relied on to relieve the estate of Thomas E. Watkins.

In this condition of affairs the creditors of Thomas E. Watkins claimed that the executors had committed a *devastavit*, and were liable, with their sureties, for the amount of their debts. Joel W. Marshall, the co-executor, had died, a discharged bankrupt. Of the sureties, James P. Marshall had become insolvent, and had conveyed his entire estate to secure other debts, which had exhausted his assets. John P. Marshall had died insolvent, leaving an estate of less than three thousand dollars to pay an indebtedness, other than his liability as surety for the executors of Thos. E. Watkins, of $30,000. John F. Edmunds, the other surety, had died in 1863, leaving an estate then valued at $122,-417.97. He left a will, which was duly probated, by which, after giving some small legacies, he directs his whole estate, real and personal, to be sold, and gives one-half of the proceeds to his widow, and the other half to certain relations named; but desired his estate to be kept together till his debts were paid, and afterwards till the death of his widow, if she desired it. His widow qualified as executrix of his will without security. Soon after her qualification she divided the personal estate of her testator as directed by the will, but without regard to his liability as surety on the bond of Joel Watkins and Joel W. Marshall, executors of Thomas E. Watkins, deceased. The said widow died in 1872 or '73, leaving a will by which she disposed of her estate. After her death the estate of John

F. Edmunds, deceased, was committed to the sheriff of Charlotte county, Richard J. Gaulding, the appellant; but no personal property came to his hands, and the land, which had never been sold, was divided among the devisees under the wills aforesaid of John F. Edmunds and Susan W. Edmunds, his widow. Upon an amended bill filed in 1880, in the case of *Scott, &c.* v. *Watkins, &c.*, all persons who had received portions under the said wills, together with the personal representatives of the decedents, were made parties; a *devastavit* by the executors of Thomas E. Watkins was suggested, and all persons liable therefor were asked to be held liable; and, as the land of John F. Edmunds, deceased, constituted all of his estate which remained and could be subjected, the court was asked to order a sale of it.

The devisees and distributees of John F. Edmunds and Susan W. Edmunds answered, resisting the prayer of the bill upon the grounds relied on in their petition for appeal. Upon the hearing, after a full report from a master commissioner showing the debts of Thos. E. Watkins, and the assets liable therefor from all sources, the circuit court of Charlotte, March 30th, 1881, entered a decree establishing a *devastavit;* and directing commissioners to sell the land left by John F. Edmunds, deceased; being satisfied that it would have to be sold, in any event, to meet his liability as surety for the executors of Thos. E. Watkins, deceased; and from this decree this appeal is taken.

The first ground of objection to the decree is the contention of the appellants that the executors of the will of Thomas E. Watkins are not justly chargeable with having committed a *devastavit;* because, though they assented to and delivered the legacies according to the directions of the will, the executor, Joel Watkins, retained in his hands the great bulk of the testator's estate, which was far more than enough to pay all the liabilities existing and since

established against it, which assets were destroyed by the results of the war.

The law of Virginia is that all the debts or liabilities of the testator must be paid before any bequests can be effectual (Lomax on Executors, ch. 4); and the first mandate of the will is that all the just debts of the testator should be promptly paid.

The answer of the executor (Joel Watkins) shows that all the legacies were assented to and delivered without any refunding bonds, and that nothing was left in the hands of the executors, as such, with which to pay the debts. "Your respondent then received the residuum given him, disposed of it as his own, and of all the estate and property given him by his brother, and has nothing now left but the land lying in this county." To the same effect is the answer of Joel W. Marshall, the other executor; and the reports of the commissioner show, as does also his answer, that Joel Watkins, who was himself largely indebted to his testator's estate, received, as special residuary legatee under the will, $17,473.16, besides the thirty-two slaves, valued at $20,000. The record shows that besides the $10,000 of special legacies paid out during the first year of their administration, there were ample assets which came to the hands of Joel Watkins, which were taken, used and consumed by him as his own, and which were not affected by the war, more than sufficient to have paid all the liabilities of his testator.

It is the duty of executors to dispose of the estate of their testator; pay first his debts, and then the legacies; and if they are so situated that from any cause they cannot perform either of these duties, they ought to seek the direction and protection of a court. In this case it is not shown that the executors were prevented by war, or by anything else, from paying the debts; there is no proof that any creditor refused, or even objected, to take the currency for his debt; and it is not shown that the war destroyed the property of

the testator so as not to leave enough to pay his debts; but it is clearly shown and admitted in their answers that the executors paid off the legacies, leaving the debts, of which they were fully advised, unpaid.   One of the executors alone taking and consuming his legacy, which was many times more than sufficient to have paid every liability of his testator's estate.

The appellants claim that the court erred in overruling the exception to the commissioner's report that it did not contain a list of the choses in action of the testator, nor a statement of their solvency, respectively; and that a further inquiry should have been made by the court before any *devastavit* as to them should be established.

The accounts of the executors, settled by them, show that the amount of the choses in action of the testator was $32,-624.99, of which the executors collected during the first three years $18,653.70, leaving due, chiefly by themselves as debtors to the estate of their testator, and other solvent legatees, $13,500.31.   Of all this great sum they paid on debts and costs of administration only the sum of $1,623.54, leaving $30,530.47, which was lost by paying legacies, and left uncollected until the obligors failed.

The court needed no further enquiry to ascertain and establish a *devastavit*, as to these choses in action, sufficient to cover the claims sought to be enforced by this suit against the estate of the testator.

The appellants contend that the stay-laws and condition of the currency during the war, prevented the executors from administering the estate in the usual way, and from availing themselves of the usual rights of sureties for the protection of their testator's estate.

It appears from the record, that of the debts established against the estate, amounting to $23,325.22, over $20,300.00 was due from the executors themselves, as principal debtors.   The testator died in 1861, before the currency became

depreciated, and while it was taken freely for debts, as it was during 1862, and the executors can blame no one that they did not pay *their own debts* and thus release the estate; and their securities must be held responsible for their failure so to do. As before stated, they received and consumed, in legacies alone, more than sufficient to have paid all the debts against their testator's estate.

It is contended that as the principal debtors were large slaveholders when Thos. E. Watkins became their surety, the subsequent abolition of slavery relieved the estate of Thomas E. Watkins from all liability on account of such suretyship. And the same is contended for the estate of John F. Edmunds, as to his suretyship for the executors of the said Thomas E. Watkins, who was one of them and a large slave owner. This is a doctrine for which no authority has been, or can be cited, and which has been disallowed by this court in establishing numerous claims against sureties since the war; but it is sufficient to say, that it has already been abundantly shown, by the facts in the record in this cause, that, wholly irrespective of the slave property of the testator, which came into the hands of the executors, and by them delivered to the legatees under the will, they received and disposed of, and consumed in the use, other assets of the estate, many times more than sufficient to have paid all the debts and liabilities of the estate, had they so applied them, in the due and dutiful course of their administration, under the mandate of the will of their testator, and the explicit and imperative prescription of the law of Virginia.

It is contended that the court erred in decreeing a sale of the lands of the surety, John F. Edmunds, while so large a portion of the lands of Joel Watkins and Thomas E. Watkins, the principals, was unsold.

The will of Thomas E. Watkins does not charge his debts on his real estate, but indicates his choses in action and

other personalty as a fund to pay his debts and money legacies. In such case, the rule laid down in *Elliott* v. *Carter*, 9 Gratt. 549, must be applied. The personal property at large is first to be applied to the payment of debts; and when legacies are to be used to pay debts, the first liable is the residuary legacy (2 Lomax on Executors, 126), and the next are the general pecuniary legacies, then the specific legacies, and lastly the real estate devised by the will. The residuary legacy given to Joel Watkins, which was taken, used and consumed by him, amounted, on April 1, 1881, to which time the debts with interest are stated, to $17,231.98. This was first liable to pay debts; and for this purpose he and his sureties are bound to account for it. As to this, there is a clear *devastavit*, and before the testator's land can be subjected to the payment of debts, this legacy must be subjected first, and the excutors' bond is security for it.

If the said land is sought to be subjected, as the land of Joel Watkins, the executor and principal in the bond, then the judgments against said Joel Watkins, which constitute liens thereon, must be first satisfied, and they will much more than exhaust it.

There is no view in which it was not necessary to sell the lands of John F. Edmunds. The record shows repeated and strenuous efforts to sell the real estate of Joel Watkins, including that devised to him by Thomas E. Watkins, some of which efforts were thwarted by the appellants themselves, who objected to the prices offered. The land unsold is worth but little, and is, thus far, wholly unsalable. If the whole quantity unsold (1,027 acres) could be sold for its assessed value it would realize less than one-third of the debts established against the estate of Thos. E. Watkins, for which the estate of John F. Edmunds is bound, as surety in the official bond of the executors, against whom the *devastavit* has been established. There is nothing left

of the estate of John F. Edmunds except the land. The devastavit having been established against the executors of Thomas E. Watkins, the creditors were entitled to a decree against them and their sureties for the whole amount of the *devastavit.* It was made clear to the court that the remnant of the real estate of Thomas E. Watkins and Joel Watkins could not be sold except after great and unreasonable delay, and at very reduced prices; and that it would. require all, and much more than all, of the lands of John F. Edmunds to pay the balance which would still remain due to the creditors; whose rights would be prejudiced by leaving the lands longer in the hands of his devisees, where it was rapidly deteriorating in value. Such being the case, the decree for sale was just and proper. *Horton.* v. *Bond,* 28 Gratt. 825.

No liability is fixed by the decree upon the only appellant, Richard J. Gaulding, sheriff and committee administrator of John F. Edmunds, in favor of the appellees; but the question of his liability is expressly reserved; and the sale of the land ordered affects only the heirs and devisees in possession; and they have not appealed. The appellant must not only be a party, but must be aggrieved by the decree complained of. 1 Barton's Ch. Prac. p. 158; *Sayre* v. *Grymes,* 1 H. & M. 404, and other cases cited; *Little* v. *Bowen and als.,* 76 Va. 724.

After the appeal from the decree of March 30, 1881, was allowed, the circuit court of Charlotte, on the 22d September, 1881, ordered the lands of John F. Edmunds, deceased,. to be rented out during the pendency of the appeal; it being represented that the said lands were being wasted, while the rents and profits were claimed and taken by the said heirs and devisees. From this last decree Richard J. Gaulding, sheriff and administrator of John F. Edmunds,. deceased, also appealed; and this second appeal is submitted along with the first. This second appeal must be dis-

missed. The appellant is not and cannot be affected or aggrieved by the decree complained of. He is not in possession of the lands, nor entitled to its rents and profits; and, in no possible contingency, can he be injured by the order of the court to sequestrate the said rents and profits. It appeared by the petition that the land was being rented out by the heirs and devisees, and thereby greatly injured, and was being impaired in value by the cutting of timber therefrom. *Moran* v. *Johnston*, 26 Gratt. 108. The fact that it would have to be sold was fully established, and the appeal was only for delay.

We find no error in the decrees of the circuit court of Charlotte county complained of, and they must be affirmed.

DECREES AFFIRMED.