# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## ALLEN AND ALS V. PATTON AND ALS.

### APRIL 28th, 1887.

1. WILLS— *Construction —Devisees— Legatees— Contribution.*— Legatees
have no right to call upon devisee to contribute to the payment of their
legacies, unless the real estate devised be expressly charged.

2. IDEM—*Case at bar.*—A., by will, required P., his devisee and executor,
to pay his fifteen named slaves three thousand dollars.  By codicil, A.
directs P. to pay the three thousand dollars out of any surplus he might
have, without interfering with the other provisions of the will—

HELD :

> The legacy was not charged on the real estate, but on the surplus
> after satisfying the other provisions of the will.  There being no
> surplus, the legacy failed.

Appeal from decree of circuit court of Danville, rendered
February 9th, 1885, in a suit wherein Robert Allen and
others were complainants and W. S. Patton and others were
defendants.  The bill was dismissed at cost of complain-
ants and they obtained an appeal.   Opinion states the case.

*W. W. Gordon,* for the appellants.

*E. E. Bouldin* and *Guy & Gilliam,* for the appellees.

RICHARDSON, J., delivered the opinion of the court.

The object of this suit was to have construed the will of
Julius Allen, late of Pittsylvania county, and  to recover a
legacy claimed by the plaintiffs under the 6th clause of
the testator's will.   The will is as follows :

" I, Julius Allen, of the county of Pittsylvania and State of Virginia, do make this my last will and testament, in manner and form as follows, revoking all other :

" I. I give to Elizabeth M. Turpin four slaves, named as follows : Jackson, Tinsley, Barrison. and Billy, to have and hold forever.

" II. I give to Thomas B. Doe and his wife, Sallie Doe, four slaves—Caty and her three children, Isabelle, Emoly, and Nat, to have and to hold forever.

" III. I give to William S. Patton and his wife, Catharine A. Patton, four slaves, as follows : Erasmus, Epy, Nancy and her child Ann Eliza, to have and to enjoy forever.

" IV. I give to Julius Allen Patton one slave, Robert, the child of Nancy, to have and to hold forever.

" V. I give to David H. Allen one slave, Tom, to have and to hold forever.

" VI. I give to William S. Patton and Catharine A. Patton, his wife, my tract of land on which I now reside, to have and to hold forever, together with all its appurtenances of every description, the stock of all kind—horses, mules, cows, sheep, hogs,—all my household and kitchen furniture, and all my plantation tools of every sort, with all debts that may be due me, to have and enjoy forever. I *lone* to William S. Patton and Catherine A., his wife, the following fifteen named slaves for the term of seven years after my *dec'd* : Sallie, Billy, Robert, James, Sidney, Sally Ann and her child Martha, Rutlege, Lewis Granville, Juley, Lizzey, David Bushrod, Ann Elisa, and John, the time to commence from the first day of October thereafter, for which I require said Patton to pay one-half of what their hire will be worth (which I leave to him) to my estate, and at the expiration of the seven years my will is that the said fifteen named slaves, together with all their increase, be emancipated and set free, and the hire to be paid together with three thousand dollars, to be paid by

said William S. Patton, to be paid to the said fifteen slaves, and that the said William S. Patton employ some faithful agent to carry them to some free State and purchase a tract of land for them; but, in the course of events, if it should so happen that the said slaves cannot be emancipated and set free, then it is my will that they be given to Julius A. Patton to have and to hold forever.

"VII. Whereas I have a claim upon a parcel of negroes belonging to Judith T. Allen's children, amounting to one legatee's part, now in the possession of Sam'l T. Morehead, of North Carolina, and James M. Williams, of Kentucky, and when got into possession I give to Thomas B. Doe and Sallie, his wife, one boy out of this lot, and the balance I give to David B. Allen. I do hereby appoint William S. Patton my *my* executor to this will, relying that it will be faithfully carried out; and that he pay all my just debts out of the portion that I have given him. I wish inventory taken of my estate, and no security required of my executor. In witness whereof I have hereunto set my hand and fixed my seal, this fifteenth day of August, 1862.

"JULIUS ALLEN. [Seal.]"

"I, Julius Allen, being of sound mind, do make this as a codicil to the above, my last —— and testament, desiring my said last will to remain in full force, except so far as altered by this codicil. My will is that William S. Patton shall not be required to pay the three thousand dollars which I required him to pay, in the body of my will, to the fifteen slaves. But, as I now have a surplus, I require said Patton, as my executor, to pay the said three thousand dollars out of any surplus I may have, without interfering with the other provisions of my will. I further will and desire that my nephew, David H. Allen, may live on the place on which I now reside for the space of seven years

after my decease, but subject to the control of said Patton, and giving him no right of property in said residence and tract of land on which is situated, except that he is permitted to rule thereon for the time specified as aforesaid, if he chooses to do so, subject to the control of said William S. Patton. The rest and residue of my estate I give to William S. Patton, to dispose of as he pleases. As witness my hand and seal, this third day of February, 1865.

" JULIUS ALLEN. [Seal.] "

" Signed, sealed and acknowledged
in our presence, both of us
being present at the same time.

" GEO. W. READ,
" J. M. KIRKPATRICK."

The will was proved and admitted to record in the county court of Pittsylvania, on the twentieth March, 1865, the testator having died only a few days before that time. In August, 1884, nearly twenty years after the will was admitted to probate, the plaintiffs, Robert Allen and others, who are the survivors of the fifteen slaves mentioned in the sixth clause of the testator's will, and the heirs of those of them who are dead, filed their bill to have the testator's will construed, and to recover the legacy of $3,000 mentioned in said sixth clause.

The plaintiffs set-forth in their bill that the assessed value of the tract of land devised by the testator to William S. Patton and wife is about $9,000, but say they are advised it is worth at least $12,000; and they refer to the inventory of the personalty belonging to the estate as of the value of $1,932.25; but they charge that many of the articles valued therein are rated at much less than their true value at that time, and insist that W. S. Patton, executor, be required, in

his answer, to make an accurate statement as to the true value of such articles of personal property, his disposition of same, and the sum realized therefor, &c. And they further charge that William S. Patton, soon after his qualification as executor, took into possession all of the estate, real and personal; that he still holds the same, and has never settled his accounts as executor.

The bill further sets forth, that, "within a few weeks after the testator's death, they were freed from slavery by the result of the war, together with the operation of the terms of President Lincoln's emancipation proclamation, bearing date January 1, 1862; they therefore never served said W. S. Patton as his slaves, nor were they ever required or requested by him so to do." But these matters appear to have been abandoned after the coming in of the answer of W. S. Patton.

But it is also averred in the bill that, by said will and codicil, one or both, said fifteen named slaves were bequeathed, by said testator, the sum of three thousand dollars to be paid to them out of his estate by said William S. Patton, executor, or out of *any surplus* of testator's estate, after the payment of his funeral expenses and debts, and that this bequest was to be divided equally between them; and that the complainants, being the survivors and descendants of said fifteen named in the will, are entitled under the statute of Virginia to receive said bequest or legacy, and to have the same divided among them according to law. And they charge that according to the proper construction and interpretation of said will and codicil, the testator's intention was that said three thousand dollars was to be paid to said fifteen named slaves out of his whole estate (except the other legacies); first, out of the surplus, if that was sufficient; if not, then out of the whole estate. In other words, that said bequest is a general legacy, and as such, a charge upon all the estate that came

into the hands of said Patton, second in dignity only to the testator's funeral expenses, debts, &c. Such is the claim asserted in the bill.

William S. Patton, in his own right and as executor of Julius Allen, answered the bill. By his answer and the vouchers filed therewith, he shows conclusively that there was no foundation whatever for the charge in the bill that the personalty which came into his hands was improperly appraised. He admits that it was appraised at only $1,932.25, but shows that it was valued by three competent persons appointed by the county court of Pittsylvania, as appears by the inventory, a true copy of which is filed with the complainant's bill; and he insists that the complainants have no right now, after the lapse of nearly twenty-four years to call upon him for an account, a matter in which they have no interest, and after two of the appraisers are dead, and when any other or more accurate statement is in the nature of things impossible. He says that the property as appraised was at a sum more than it was worth to him; and that while the personalty was appraised at $1,932.25, he paid out of his own funds over $3,000 in discharging testator's debts. And the respondent denies *in toto* the claim asserted by the complainants; and he says he never heard of them asserting any claim until he read their bill. Pending the suit, W. S. Patton died, and the cause was properly revived; and all parties in interest being before the court, a decree was rendered on the nineteenth of February, 1885, dismissing the plaintiff's bill; and from that decree the case is here on appeal.

We are clearly of opinion that there is no error in the decree complained of. A mere casual reading of the 6th and 7th clauses of the testator's will in the light of all its provisions, including the codicil thereto, ought to be sufficient to demonstrate to any impartial mind that the claim

asserted by the appellants is not sanctioned by, but is opposed to the plain terms of the testator's will.

Looking to the bill, it is not easy to discern clearly what the claim is based upon. The language of the bill is, "by said will and codicil, one or both, said fifteen named slaves are bequeathed by said testator the sum of three thousand dollars to be paid to them out of his estate by said W. S. Patton, executor, or out of *any* surplus of testator's estate, after the payment of his funeral expenses and debts." If such be the will, it is indeed a vague, indefinite and meaningless instrument. But there is nothing in the will that affords the least pretext for such an interpretation.

In another part of the bill it is said: "Your complainants are advised and here also charge, that if said will and codicil be properly construed and interpreted, that the intent and meaning of the testator fully appears to be that said three thousand dollars bequest was to be paid to the said fifteen named slaves out of his whole estate, (except the other legacies), first out of the *surplus*, if that were sufficient; if not, then out of his whole estate; that said legacy is in no sense a special legacy to be paid out of some special property or currency, Confederate or otherwise, as said Patton claimed it to be, but that said legacy is a general legacy, and as such a charge upon all the estate that came into the hands of said Patton, second in dignity only to testator's funeral expenses, debts," &c. Nor is there anything in the will upon which to found this contention.

It is conceded in the petition for appeal, and in argument at the bar, that there was no *surplus* after the payment of debts; indeed, it appears that the executor paid out of his own funds a sum largely in excess of the value of the personalty which came to his hands. Then, there being no surplus, the claim of the appellants is that the $3,000 legacy is a charge upon the land devised to William

S. Patton. This is really the only question to be considered.

In *Gaw* v. *Huffman*, 12 Gratt. 628, Moncure, J., said: " Whether such a charge is created by a will, is always a question of intention depending upon the construction of the whole will. It is so natural to suppose that a man in that solemn act intended to be just, that courts have taken very slight words in a will to imply a charge upon lands." Carr, J., in *Downman* v. *Rust*, 6 Rand. 587. " Courts of equity (said Lord Lyndhurst) have always been desirous of sustaining charges by implication for payment of debts, and the presumption in favor of them is not to be repelled by anything short of clear and manifest evidence (from the will) of a contrary intention." *Price* v. *North*, 1 Philips' R. 85. It has therefore been established as a general rule, that a direction by a testator that his debts shall be paid, charges them by implication on his real estate, either as against his heir at law or devisee. Rom. on Assets, ch. 4, § 2, p. 57; 8th Law Libr. 39; Leading Cases in Eq. 71 Id. 247. To this general rule there are exceptions, one of which is where the debts are directed to be paid by the executors. "If the testator directs a particular person to pay, he is presumed, in the absence of all other circumstances, to intend him to pay out of the funds with which he is entrusted, and not out of other funds over which he has no control. If the executor is pointed out as the person to pay, that excludes the presumption that other persons not named are to pay." 2 Story's Eq. Jur. § 1247. When the executor is devisee of the real estate, a charge upon it will generally be implied by such a direction. But this will not be the case when the estate is specifically devised to a person who happens to be one of the executors. And even where the executors are also devisees, a mere general introductory direction to the

executors will not operate as a charge if it is manifest from the whole will that it was not so intended.

In the application of these principles to the case in hand, there can be no difficulty in seeing that the claim of the appellants is not well founded. It will not be denied that William S. Patton took the real estate in question by specific devise; nor that he took the personal estate bequeathed to him as a specific legacy under the will; nor can it be denied that he took both the realty and personalty charged with the testator's debts, the language, in the seventh clause of the will, being: "I do hereby appoint William S. Patton my executor to this will, relying that it will be faithfully carried out, and that he pay all my just debts out of the portion that I have given him." There is not, according to the authority of *Gaw* v. *Huffman, supra,* even a *slight* word from which to imply an intention to charge the specifically devised real estate with the payment of the $3,000 legacy in question. The land and personalty devised and bequeathed to William S. Patton was only charged with the testator's debts.

It is true, if we look alone to the preceding sixth clause, we find language that brings the case within the general rule laid down in *Gaw* v. *Huffman;* but when the language there used is read in the light of the charge wrought upon it by the codicil, then the case is taken out of said rule, comes within the exception as stated by Judge Moncure, and there is not to be found in the whole will a single intimation of an intention to charge this legacy upon the testator's whole estate (other legacies excepted), or upon the land devised specifically to William S. Patton.

By the said sixth clause the testator loans the fifteen slaves therein named to William S. Patton and Catherine A., his wife, for a term of seven years, to commence on the first of October next after the testator's death; and he requires *said Patton* to pay to his estate one-half of the

value of their hire, to be estimated by Patton; and the testator requires that, at the end of seven years of service as slaves to said Patton, the said slaves and all their increase be emancipated; and that said Patton pay to them the amount of said half hire, together with three thousand dollars. But, a very short time before his death, the testator makes a codicil to his will, in which he uses these expressions: "I, Julius Allen, being of sound mind, do make this as a codicil to the above my last ———— and testament, desiring my said last will to remain in full force, except so far as altered by this codicil." Here is a clearly expressed testatorial intention to change the body of his will by this codicil, but only to the extent to be specified in the codicil. Did he by the codicil effect a change; and, if so, to what extent? He did; and most effectually. He proceeds: "My will is that William S. Patton shall not be required to pay the three thousand dollars which I required him to pay in the body of my will to the fifteen slaves. But as I now have a surplus, I require said Patton, as my executor, to pay the said three thousand dollars out of any surplus I may have, without interfering with the other provisions of my will." The residue of the codicil is unimportant, except that it makes William S. Patton residuary legatee.

Thus a most material change, in the body of the will, was wrought by the hand of the testator, guided by his disposing intent. The express provisions of the codicil became thus interwoven into the body of the will, wiping out, as with a sponge, so much of the said sixth clause as required the legacy of three thousand dollars to be paid to said slaves by William S. Patton, and substituting in place thereof that clearly expressed mandatory provision contained in the codicil, namely: "My will is that William S. Patton shall not be required to pay the three thousand dollars which I required him to pay in the body of my will

to the fifteen slaves.   But as I now have a surplus, I require said Patton, as my executor, to pay the said three thousand dollars out of any surplus I may have, without interfering with the other provisions of my will." That this change effected the reading and sense of the said sixth clause is obvious, and the claim of the appellants to charge this legacy upon the real estate devised to William S. Patton stands unsupported by even the slightest word to be found in the will.

The testator devised his real estate specifically, charged only with the payment of his debts.   Every legacy given by the will, except the three thousand dollar bequest here in question, was specific.   The land is not charged with the payment of this legacy.   It was a general bequest, payable out of " *any surplus* " that might be in the hands of his executor, as such.   There was, as it turned out, no surplus, and the legacy failed.   Doubtless the surplus referred to by the testator in the codicil to his will, and to which he expressly limited this legacy for payment, was Confederate currency.   But the testator's body was scarcely cold in the grave, when the Confederacy itself expired, and, with it, Confederate currency.

In *Gaw* v. *Huffman, supra,* the question discussed was, when lands devised will be charged with the payment of debts, and when not.   The same principle applies as to legacies.   In *Elliott* v. *Carter,* 9 Gratt. 550, it is said : " This exemption of real estate devised extends as well to the case of a deficiency of personal assets for the payment of legacies as of debts, the legatees having no right to call upon the devisees to contribute to the payment of their legacies unless the real estate be expressly charged." See also, 3 Red. on Wills, 365, and note 34, where numerous leading authorities are cited.

The testator took every precaution necessary to guard against any such claim as that now asserted by the appel-

lants.   As if conscious not only of his own early dissolution, but of the then impending disastrous fall of the Confederacy, and mindful that what he had intended as a blessing to William S. Patton, the chief object of his bounty, might prove a curse, the testator determined to add a codicil materially changing the body of his will, especially as to this three thousand dollar legacy.   The codicil starts out with the declaration to the effect that the preceding will must "remain in full force, except so far as altered by this codicil."   Then, in the most exact terms, it is expressly declared that William S. Patton shall not be required to pay the three thousand dollars which, in the body of the will, he had been required to pay to the fifteen slaves, and with equal exactness providing for its payment by said Patton, as executor, out of "*any surplus,*"—meaning, of course, the general residuum, the surplus of his estate in the hands of his executor as such; and then, out of abundant caution, the testator in effect says this must be done "without interfering with the *other* provisions of my will."   Thus the testatorial intent is made so clear that there is not room for doubt.   Upon neither principle nor authority is there any just ground for the claim asserted by the appellants.

The decree of the court below is right, and it must be affirmed.

DECREE AFFIRMED.