# Wytheville.

## DAVID C. KELLAM, SR.'S, EXECUTORS v. LILLIAN M. JACOB AND OTHERS.

June 13, 1929.

The opinion states the case.

*Stewart K. Powell, Warner Ames, Louis S. Sacks* and *F. Emmett Topping*, for the appellants.

*J. Brooks Mapp, Mears & Mears, John E. Nottingham* and *John T. Wilkins*, for the appellees.

CAMPBELL, J., delivered the opinion of the court.

The main controversy in this cause arises over a proper construction of certain parts of the will of David C. Kellam, Sr., deceased. The following is a copy of the material clause of the will:

(1) "I desire and hereby direct that all of my just debts be paid as soon after my death as is practicable

and I charge my personal estate primarily with their payment.

(2) "I hereby authorize and empower my hereinafter named executrix and executor to sell and convey, either by private contract or public auction, and upon such terms as they may deem best, the following described real estate, to-wit: The five (5) lots in Norfolk, Virginia, purchased by me from the North Ghent Land Company; and the six (6) lots near Portsmouth, Virginia, purchased by me from the Virginia Realty and Investment Company. I also hereby authorize and empower my said executrix and executor to likewise sell my stock in the Eastern Shore of Virginia Produce Exchange.

"The receipts from the sale of said lots and stock are to become a part of the *corpus* of my estate, for distribution as provided under this will.

(3) "I give, devise and bequeath my store-house lot, together with all the buildings and appurtenances thereon and thereto, and with all the goods, wares, merchandise, furniture and fixtures in said building, and with all the store accounts receivable (except such accounts as may have been closed by notes, such notes to become a part of the *corpus* of my estate for collection and distribution under section 14 of this will), to my two sons, David C. Kellam, Jr., and Henry Stafford Kellam, each to have an undivided one-half (½) interest therein, in fee simple absolute. But in accepting said open accounts receivable, they are to jointly assume the payment of all bills payable for stock then in said store.

"I also give, devise and bequeath to my said two sons my home farm whereon I now reside, with all the buildings and appurtenances thereon and thereto, with all the household (except the piano, which I leave to my

daughter Helen) and kitchen furniture in said home, and all the out-of-doors personalty on or belonging to said farm, each to have an undivided one-half ($\frac{1}{2}$) interest therein, subject only to the charge that they together annually pay to the r sister, Helen P. Jackson, the sum of one hundred and fifty dollars ($150.00) for a period of five (5) years from the date of my death, and for which payment a lien is hereby expressly reserved on said farm.

(4) "I give and devise my farm 'Jeffersonia,' in this county, whereon she now resides, to my daughter, Lillian M. Jacob, in fee simple absolute.

(5) "I give and bequeath to my daughter, Helen P. Jackson, the sum of eight thousand dollars ($8,000.00). This amount, together with the tract of about $14\frac{1}{2}$ acres of land at Shadyside, in this county, which I gave and conveyed in fee simple to my said daughter, Helen, by deed dated June 14, 1921, and on which she now resides, will about equal in value the gifts hereinbefore made to each of my several other children.

(6) "I give and devise my farm Barn Field, near Kinsale, Westmoreland county, Virginia, together with all the live-stock and farming implements thereon, to my daughter, Lucy Wilmina Brown, in fee simple absolute.

(7) "I give and devise my undivided one-fourth ($\frac{1}{4}$) interest in 'Grape Valley' farm, near Birds Nest, in this county, to my said three daughters, Lillian M. Jacobs, Helen P. Jackson and Lucy Wilmina Brown, in equal parts, share and share alike, in fee simple absolute. With this gift, they will own said farm in its entirety, they together already owning an undivided three-fourths ($\frac{3}{4}$) thereof in fee simple.

(14) "All the rest and residue of my estate, whether real, personal or mixed, and wheresoever situate and being, I give, devise and bequeath to my said five (5) children, Lillian M. Jacob, Helen P. Jackson, Lucy Wilmina Brown, David C. Kellam, Jr., and Henry Stafford Kellam, to be equally divided between and among them, share and share alike, in fee simple absolute.

(16) "Lapse of time and changing conditions may vary the values of the properties passing to my several children under this will; I indulge the hope, however, that each may feel that any inequalities that may exist or develop were unintentional and unforseen on my part."

The will is dated October 14, 1924, and testator died on the 28th day of March, 1925. Prior to the death of testator, the land devised to Mrs. Lillian M. Jacob had been encumbered by the placing thereon of a deed of trust to secure the sum of $6,000.00, which principal sum had been reduced to $4,000.00 at the date of testator's death.

There was upon the land devised to Mrs. Lucy W. Brown, at the date of testator's death, a deed of trust securing the sum of $500.00. On the "Grape Valley" farm there was a lien of $1,000.00.

Since the death of the testator, David C. Kellam, Jr., and Henry S. Kellam have been declared involuntary bankrupts, and Charles M. Lankford, Jr., has been appointed their trustee in bankruptcy and is asserting in this suit claim to the property devised to them.

The settlement of the personal representatives discloses that the personal estate is not sufficient to discharge the indebtedness of the testator. The decree entered by the circuit court adjudges that the

lands devised to Mrs. Jacob and Mrs. Brown were devised free of encumbrances; that the legacy bequeathed to Mrs. Jackson "was by the testator given her as, for and in lieu of a specific devise of real estate" and is not primarily liable to the debts of the decedent; that the bequest to D. C. and H. S. Kellam, which represents the appraised value of the stock of merchandise and personal property which they took under the third clause of the will, should abate in favor of the devisee to Mrs. Jacob and Mrs. Brown, as well as in favor of the bequest to Mrs. Jackson.

Before proceeding to construe the will involved, we will advert to the general doctrine applicable to the proper payment of the debts of a decedent.

In *Elliott* v. *Carter*, 9 Gratt. (50 Va.) 548, it is said: "The order in which the different funds or subjects of property constituting the estate of a deceased testator, and which are liable to the payment of debts, will be applied, seems to be pretty clearly settled by the various adjudications that have been made upon the subject. The first to be so applied is the personal estate at large not exempted by the terms of the will, or by necessary implication. Next to it, real estate or an interest therein expressly set apart by the will for payment of debts. Next, real estate descended to the heirs. After it, property, real or personal, expressly charged with payment of debts, and then, subject to such charge, specifically devised or bequeathed. If these prove inadequate, then general pecuniary legacies, and after them specific legacies, both classes ratably; and in the last resort, real estate devised by the will." See also *Edmunds* v. *Scott*, 78 Va. 720; Bispham's Pr. Eq. (3d ed.), 346-405; Adams' Eq. (3d Amer. Ed.) 264.

The principle enunciated in *Elliott* v. *Carter, supra*, has been affirmed in the following cases: *Crouch* v. *Davis*, 23 Gratt. (64 Va.) 62; *Murphy* v. *Carter*, 23 Gratt. (64 Va.) 477; *Cockerille* v. *Dale*, 33 Gratt. (74 Va.) 45, 49; *Edmunds* v. *Scott*, 78 Va. 720, 729; *Allen* v. *Patton*, 83 Va. 265, 2 S. E. 143; *New* v. *Bass*, 92 Va. 383, 389, 23 S. E. 747; *Todd* v. *McFall*, 96 Va. 754, 32 S. E. 472; *Frazier* v. *Littleton*, 100 Va. 9, 40 S. E. 108.

■ Having in mind this principle, the learned judge of the lower court reached the conclusion that the controlling clause in the will was the first clause thereof, and that the testator intended to charge the personal property with the payment of his debts. However prone courts may be to follow precedents, they are of little assistance when it comes to the construction of a will.

In *Conrad* v. *Conrad's Executor*, 123 Va. 711, 97 S. E. 336, it is said: "The intention of the testator is the polar star which is to guide in the interpretation of all wills, and, when ascertained, effect will be given to it unless it violates some rule of law or is contrary to public policy." If of sound mind and disposing memory, it is the province of a testator to dispose of his property as he thinks best, and courts should not be eager to substitute their will for his.

■ While it is a general rule of law that personalty is not only the primary but the only fund for the payment of debts and legacies, unless they are charged upon the realty by express direction or by necessary implication, the general rule is not to be applied in the construction of a will when to do so will defeat the manifest intention of the testator. It is the intention of the testator, however arrived at, that is the chief concern of the court, and that intention, when once determined, will prevail, even though the technical refinements of the law must be sacrificed.

This doctrine is admirably stated by Chief Justice Prentis in *March* v. *Graham*, 142 Va. 285, 128 S. E. 550, thus: "The underlying principle in all of these cases in the construction of the wills is always that the intention of the testator, if it can be determined, is controlling, and all refinements of the law as to the abatement or ademption of legacies for the exoneration of realty specifically devised must yield to the power of the testator to dispose of his property as he desires. This intention, as has been so often said, is the guiding star, and when this is ascertained and can be made effective, the quest is ended and all other rules become immaterial.

In *Roberts* v. *Scyphers*, 128 Va. 86, 104 S. E. 699, Judge Burks said: "Little, if anything, new is to be said on the subject of rules for the interpretation of wills. Each will is in large measure a law unto itself. If the intention of the testator can be fairly gathered from the language of his will, and the devise or bequest is not forbidden by law, no rule of law will control that intention. The intention of the testator, when adequately expressed in his will, overrides all other rules of interpretation."

The adoption of this rule does no violence to the rule laid down in *Elliott* v. *Carter, supra*, as the rule there applied was not in conflict with the manifest intention of the testators as to the manner in which their property should be distributed.

In the suit at bar we have before us not only the will of the testator but likewise parol evidence of the circumstances attending its execution, a list of testator's indebtedness, as well as information regarding the value of the several estates devised. His chief beneficiaries were his five children, three daughters and two sons. His property consisted largely of real

estate with which and the value thereof (according to evidence) he was thoroughly familiar. He was conversant with his indebtedness. The language of the will plainly indicates that testator regarded all of his children with equal affection.

■ ■ While it is true that the first clause of the will deals with the payment of debts and primarily charged the personalty with their payment, this clause, as shown by subsequent events, can not be the polar star if, as said in the opinion of the trial court, "it is inescapably obious and indisputable that the testator, however short he may have fallen of accomplishing his intention, designed and endeavored to divide his estate among his five offsprings equitably and equally." If this was the intention of the testator, it naturally follows that the final conclusion of the trial court is erroneous. It is impossible to reconcile the holding of the court, based upon *Elliott* v. *Carter*, that the bequest to the sons should abate, with the holding that the general legacy bequeathed to Mrs. Jackson, based upon the obvious intention of the testator to equalize his gifts to his children, should stand. Those bequests must stand together or fall together.

That it was the intention of the testator to provide equally for his children is made manifest by the language employed in paragraphs 5 and 16 of his will. In clause 5 we read: "I give and bequeath to my daughter, Helen P. Jackson, the sum of eight thousand dollars ($8,000.00). This amount, together with the tract of about 14½ acres of land at Shadyside, in this county, which I gave and conveyed in fee simple to my said daughter, Helen, by deed dated June 14, 1921, and on which she now resides, will about equal in value the gifts hereinbefore made to each of my several children."

Clause 16 is as follows: "Lapse of time and changing conditions may vary the values of the property passing to my several children under this will; I indulge the hope, however, that each may feel that any inequalities that may exist or develop were unintentional and unforeseen on my part."

This language is capable of but one interpretation, that prompted by a father's affection for his children, the testator intended to make an equitable distribution of his estate. While the lands devised to the daughters are not expressly charged with the payment of the liens, the clear implication is that they were so charged. To hold otherwise leads to this result: Mrs. Lillian N. Jacob would receive real estate valued by some of the witnesses at $30,000.00 (by others at $22,500.00); Mrs. Lucy W. Brown would receive real estate valued at $11,500.00; in addition thereto they would receive their pro rata share of the proceeds from the sale of the personalty and the real estate directed to be sold in the event there should be funds remaining after the payment of the testator's debts; Mrs. Helen P. Jackson would get, if the deed of trust liens are satisfied out of payments derived from the residue of the estate, between six and seven thousand dollars; the two sons would have their patrimony reduced by the repayment of $4,677.40, and such other sums as their portion bears to the whole indebtedness. It seems manifest that this result was not intended by the testator.

We are of opinion that, in order to carry out the intention of the testator to distribute his estate as equally as possible among his children, Mrs. Jacob takes the farm "Jeffersonia" *cum onere*, and should be charged with the payment of the deed of trust upon the land devised to her; that Mrs. Brown takes the farm

"Barn Field" *cum onere*, and should be charged with the payment of the deed of trust upon the land devised to her; that Mrs. Jacob, Mrs. Jackson and Mrs. Brown take one-fourth interest of testator in the "Grape Valley" farm *cum onere*, and should be charged with the payment of the deed of trust upon it. We are also of opinion that the decree is erroneous in requiring the sons at this time to repay the sum of $4,677.40.

The cause will be reversed and remanded with direction to the lower court to further administer the estate of David C. Kellam, Sr., according to the general rule applicable to the payment of debts to the testator.

*Reversed.*