# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢

## HAMMOND V. RIDLEY'S EXECUTOR AND OTHERS.

### June 11, 1914.

1. TRUSTS AND TRUSTEES—*Declaration of Trust—Certainty.*—The terms of a trust are sufficiently expressed where the language used is such that a court of equity can readily give full force and effect to the trust. No particular technical words need be used, even the words *trust* or *trustee* are not essential. Any other words which unequivocally show an intention that the legal estate was vested in one person, to be held in some manner or for some purpose on behalf of another, if certain as to all other requisites, are sufficient.

2. MORTGAGES—*Absolute Deed—Consideration.*—A deed absolute on its face, but intended to secure a specific debt, cannot be said to be without consideration.

3. EQUITY—*Laches—Trusts—Case in Judgment.*—A trust in land declared in 1900 and repeatedly thereafter admitted by the declarant until his death in 1908 is not defeated by the defense of laches set up to a bill filed in 1911 to enforce the trust. As long as the relation of trustee and *cestui que trust* is acknowledged to exist between the parties, and the trust is continued, lapse of time can constitute no bar to an account or other proper relief for the *cestui que trust.*

4. FRAUD AND FRAUDULENT CONVEYANCES—*Presumption.*—Fraud is never presumed, but must always be alleged and clearly proved. The fact that a party, largely indebted to others, gave an absolute deed of his property to one of his creditors as a mortgage to secure his debt, does not authorize a court of equity to infer that such deed was intended to hinder, delay and defraud his creditors.

5. TRUSTS AND TRUSTEES—*Deed to Secure Creditors—Subsequent Deed.* A deed of trust to secure creditors does not divest the grantor of all interest in the property conveyed. His beneficial interest continues, subject to liability for the debts secured, and he can further encumber it by mortgage to secure other creditors.

6. TRUSTS AND TRUSTEES—*Release by Trustee—Parties—Case in Judgment.*—R. held the legal title to a tract of land owned jointly in fee by H. and himself. H. conveyed his equitable interest to R. as security for a debt and subsequently conveyed the same interest, subject to his homestead, to a trustee to secure his general creditors. H. thereafter paid the debt due R. and at his instance the trustee in the deed for the benefit of the general creditors made a deed of release to R. who held the legal title. It was objected by R's executor that the trustee had no right to make the release.

*Held*: Whatever effect, if any, that release had, inured, not to the benefit of R. who had the legal title, but to him as trustee and to his *cestui que trust*, at whose instance and for whose benefit it was made, in order to get the beneficial title then outstanding in the trustee united with the legal title then in R., and hence the executor could not raise the question.

Appeal from a decree of the Circuit Court of Westmoreland county. Decree for the defendants. Complainant appeals.

*Reversed.*

The opinion states the case.

*Moore, Barbour, Keith & McCandlish* and *George Mason* for the appellant.

*J. O. Hefflin* and *J. W. Chinn, Jr.,* for the appellees.

HARRISON, J., delivered the opinion of the court.

Cuthbert W. Ridley died in August, 1908, and this bill was filed in January, 1911, by John B. Hammond against his executors and devisees, alleging that he and the deceased were, in the lifetime of the latter, the joint and equal owners of a certain farm in Westmoreland county; that Ridley held the legal title to the farm, and had died without conveying to him his one-half thereof. The prayer of the bill was that complainant might be decreed

to be a half owner in the farm and that the same be partitioned, etc. The prayer was denied and the bill dismissed.

It is not questioned that for some years the complainant and C. W. Ridley were the joint and equal owners of the farm in question, known as ''Bluff Point,'' containing two hundred and ninety-nine acres, but it is insisted by the defendants that the complainant, by deed dated June 20, 1899, divested himself of all interest in the farm by conveying such interest to C. W. Ridley, and that he is now estopped from asserting any claim therein as against the heirs and devisees of his grantee.

It appears that by deed duly recorded, dated March 14, 1895, the complainant claimed his homestead in his one-half interest in this tract of land, placing his valuation thereon at $2,000; and on March 27, of the same year, made a general deed of assignment for the benefit of his creditors, conveying thereby to trustees all of his property, real and personal, including his one-half interest in the Bluff Point farm, subject, however, under the express provisions of the deed, to all legal exemptions to which the grantor was entitled. The trustees under this deed, who were charged with the duty of administering the trust, being satisfied that the undivided one-half interest of the debtor in the Bluff Point farm was not worth more than the homestead exemption claimed thereon, and that any effort to sell the same, with its attendant costs, would only result in loss to the creditors, never undertook to sell, and allowed such interest to remain in the possession of the homestead claimant. In this view the creditors, by their silence at least, seem to have acquiesced.

It is true that by deed dated June 20, 1899, the complainant conveyed his one-half interest in this farm to his joint owner, C. W. Ridley. This deed was absolute on its face and for an expressed consideration of $10.00.

The fact is, however, as well established as the deed itself, that the purpose of this conveyance was merely to secure an indebtedness due from the grantor to the grantee. This is shown by the following written declaration executed by C. W. Ridley and delivered to the complainant more than a year after the deed was made: "I, C. W. Ridley, on this 31st day of August, 1900, do declare, that I hold the legal title to 'Bluff Point Farm' in Westmoreland county, State of Virginia, and that John B. Hammond is entitled to one undivided half interest in said farm, subject to the payment to me of an existing indebtedness of $265.36 and interest thereon until paid; and such further indebtedness as may arise in the management of said farm, and be due and owing at the time of final settlement of his interest therein."

It further appears that by another paper bearing even date with that last mentioned, signed by both the complainant and Ridley, it was recited that all matters of debit and credit and all matters of partnership account in relation to Bluff Point farm from December, 1895, to June, 1899, (the date of the conveyance by complainant to Ridley) had been included and fully considered, and that it was found, ascertained and agreed that there was due and owing on that date from the complainant to Ridley on personal account $238.67, and on partnership account of Bluff Point farm $26.69, the two balances aggregating $265.36. It is further recited that for the purpose of better securing this balance it was agreed that C. W. Ridley was thereby fully authorized to retain out of any funds, arising from the equitable interest of Hammond in the Bluff Point farm, a sufficient sum to pay whatever might then remain unpaid of such ascertained indebtedness.

It further appears from a written receipt signed by C. W. Ridley, dated October 31, 1904, that on that day

the complainant settled in full with Ridley and paid to
him the entire balance mentioned of $265.36 and interest.
It further appears that after the complainant had dis-
charged his indebtedness to Ridley, he procured from the
trustees under his general deed of assignment a deed,
dated November 22, 1904, releasing his interest in the
farm from the encumbrance of such general deed. This
release was made to C. W. Ridley, in whom the legal
title of complainant's interest still remained, but was de-
livered to complainant and retained by him, he having
procured the release for the purpose of perfecting the
legal title in Ridley and thereby removing any cloud
thereon by reason of the lien of the deed of assignment.
The indisputable proof afforded by these written me
morials that the complainant was the true and beneficial
owner of an undivided half interest in this farm is fur-
ther fortified by parol evidence which shows that, in his
life time, Ridley repeatedly admitted that he and the
complainant were joint and equal owners thereof.

The contention of the defendants that the complainant
has not stated in his bill a case entitling him to the relief
asked, upon the facts shown of record, cannot be sus-
tained. The facts as they are shown to exist differ in no
essential particular from the case stated in the bill, and
the complainant is, therefore, entitled to the aid of a
court of equity.

A further contention of the defendants is that the
declaration of trust relied on by the complainant does not
set out with sufficient particularity the terms, and the
manner in which the trust is to be performed. The
declaration of trust mentioned is the paper dated August
31, 1900, already quoted in full, which is followed by
the more extended paper, of even date, also herein ad-
verted to. It is difficult to understand how the terms of a
trust could be more explicit. Certainly the expression

of such terms is ample to enable a court of equity to give full force and effect to the trust. No particular technical words need be used, even the words *trust* or *trustee* are not essential—any other words which unequivocally show an intention that the legal estate 'was vested in one person, to be held in some manner or for some purpose on behalf of another, if certain as to all other requisites, are sufficient. Pomeroy's Eq. (3rd ed.), Vol. 3, sec. 1109.

The defendants further contend that if these papers are sufficient to operate as a declaration of trust, such trust will not be enforced by a court of equity because it is voluntary, and also because the conditions have not been performed.

There can be but one deduction from the facts already stated, namely, that the complainant vested the legal title to his half of the farm in Ridley for the express purpose of securing to the latter certain specifically mentioned indebtedness, with authority in Ridley "to retain out of any funds that may, at any time before payment of the debt, come into his hands, arising from the equitable interest of said Hammond in Bluff Point farm." The purpose and condition of the trust was performed when the complainant paid the debt thereby secured, and no argument is needed to show that such a transaction under such circumstances is not voluntary.

The defendants make the further contention that the complainant is not entitled to the relief prayed for because of laches in asserting his claim. This position is untenable. The trust here was declared in writing in 1900. Payment of the debt thereby secured was acknowledged in writing in 1904. The existence of the trust in favor of the complainant in an undivided one-half interest in the farm was repeatedly admitted by Ridley between the last-mentioned date and the date of his death

in 1908. There is nothing in the circumstances of the case to admit of the application of the doctrine of laches; on the contrary, the continued existence of the trust, repeatedly acknowledged, is sufficient to defeat its application.

As said by Judge Joynes in *Bargamin* v. *Clarke,* 20 Gratt. (61 Va.) 544, "As long as the relation of trustee and *cestui que trust* is acknowledged to exist between the parties, and the trust is continued, lapse of time can constitute no bar to an account or other proper relief for the *cestui que trust."*

The defendants further contend that the complainant is estopped by his own deeds to claim any interest in the farm. Under this head it is suggested that the court may infer that complainant's deed to Ridley was voluntary and made to defraud his creditors, and for that reason deny him a hearing.

We have already seen that the deed mentioned was not voluntary, and there is no charge in the pleading, or intimation in the evidence, that the transaction was tainted with the slightest fraud. On the contrary, the idea is negatived by the established facts. In this suggestion the rule that fraud is never presumed but must always be alleged and clearly proven, is entirely ignored.

It is also insisted that inasmuch as the complainant had assigned this property for the benefit of his creditors, he thereby divested himself of all interest therein, and cannot now avail himself of the failure to record the deed of assignment in Westmoreland county.

The deed of assignment expressly reserves to the complainant all the exemptions to which he was entitled, which included his homestead exemption of $2,000, an interest in the property large enough, in the judgment of the trustees, to take the whole half interest. Further, a deed of conveyance to secure creditors does not, as contended, divest the grantor of all interest in the prop

erty conveyed. His beneficial interest continues, subject to be applied to the satisfaction of the debts secured. The grantor can further encumber his interest, as was done in this case, by the mortgage to secure Ridley the $265.36.

The question is discussed in the defendants' brief as to whether or not the trustees in the general deed of assignment had the right to release the complainant's one-half interest in the farm from the lien of that encumbrance. Whether or not the trustees committed a breach of trust in making the release mentioned is a matter which does not concern the defendants. The only persons interested in that question are, the complainant, his creditors and the trustees, who are raising no issue on the subject. Whatever effect, if any, that release had inured, not to the personal benefit of Ridley, who held the legal title, but to him as trustee and to his *cestui que trust,* at whose instance and for whose benefit it was made in order to get the legal title then outstanding in the trustees united with the legal title then in Ridley.

The remaining contentions found in the brief of defendants have been carefully considered, and, even if tenable, they could not affect the result reached in this case; and, therefore, they need not be further noticed.

Upon the whole case, we are of opinion that the complainant, John B. Hammond, has established that he is the equitable owner of an undivided one-half interest in the Bluff Point farm in Westmoreland county, and that C. W. Ridley, his late joint and equal owner, was holder of the legal title thereto for his benefit. It follows from this conclusion that the lower court erred in denying the relief prayed for and dismissing the complainant's bill.

The decree appealed from must, therefore, be reversed, and the cause remanded for further proceedings in accordance with the views expressed in this opinion.

*Reversed.*