# Wytheville

## J. G. BROADDUS v. MARTHA BROADDUS GRESHAM.

June 14, 1943.

Record No. 2665.

Present, All the Justices.

The opinion states the case.

*Brown & Garrett*, for the appellant.

*Meade & Talbott*, for the appellee.

EGGLESTON, J., delivered the opinion of the court.

Lizzie W. Broaddus died at her home in Essex county, Virginia, on January 24, 1922, leaving a will containing this provision which is pertinent to the present controversy: "I will the income from my Danville property to my husband except $50 a mo. to Martha Broaddus payable monthly, J. G. Broaddus to keep the property in repairs and taxes paid. At his death *to* direct that it be equally divided between my children."

Shortly after the death of the testatrix, J. G. Broaddus, her husband, qualified as administrator of her estate, with the will annexed, and promptly took possession of and has since collected the rents from the several pieces of Danville

property. Out of the rents he has paid the taxes, repairs and insurance and a part of the monthly instalments due to the daughter. The balance due her is the subject of this controversy.

Since the date of her mother's death Martha Broaddus has continued to live at her father's home, "Glencairn," in Essex county. When she became of age, on January 24, 1923, she receipted in full for the instalments of the legacy due her to that date. About five years later she married Stanley O. Gresham who was then engaged in the mercantile business in the neighborhood. The young couple made their home at "Glencairn" where Mrs. Gresham continued to run the household as she had done since her mother's death. There a son was born to the Greshams in 1930 and a daughter in 1933.

Up to 1933 the rents from the Danville properties had been collected through a relative who lived there. In that year he died and J. G. Broaddus moved to Danville in order that he might better care for the property. Mrs. Gresham, her husband, and her two children continued to make their home at "Glencairn," although no agreement was entered into as to what rent or compensation they should pay Mr. Broaddus for the use and occupancy of the latter property. This situation continued until August 4, 1941, when J. G. Broaddus and Stanley O. Gresham entered into a written contract of lease whereby Gresham was to pay the sum of $50 per month for rent of the farm.

In the meantime, although the net income from the Danville properties had amounted to more than $50 per month, Mr. Broaddus was considerably in arrears in the payments due his daughter under the terms of the will. Apparently they had become estranged. She had frequently called upon him for a settlement, but this was not made, and in May, 1941, she filed her bill of complaint against her father, her brothers and a sister, who were the remaindermen under the will, asking for an interpretation of her mother's will, and alleging that under its terms her father had collected and

held the rents from the Danville properties as a trustee for her benefit, and as such was accountable to her for the monthly instalments payable to her. She prayed that he be required to account to her for the rents collected, that she might have a judgment against him for the balance due her, and that this amount be decreed to be a charge against his life estate in the real estate mentioned.

J. G. Broaddus answered denying that he occupied the status of a trustee to the complainant, and alleging that on the contrary the mere relation of debtor and creditor existed between them. He denied that the complainant's claim was a charge on his life estate in the real estate; alleged that a large portion of her claim had been barred by the statute of limitation or by her laches; and asserted that he was entitled to certain credits and offsets by reason of her use and occupancy of his "Glencairn" property.

Pursuant to a decree of reference a commissioner in chancery reported that there was an accumulated balance due the complainant of $8,137.17 as of April 24, 1942, but that against this sum the defendant, J. G. Broaddus, was entitled, under the "doctrine of equitable estoppel," to a credit of $4,550 for the use and occupancy by the complainant and her family of the defendant's "Glencairn" property, from October 24, 1933, when the defendant left there, until the date of the institution of the suit, calculated at the rate of $50 per month.

After due consideration of the exceptions which both parties filed to the report, the trial court held and decreed that the will created in favor of the complainant an express trust in the net rents arising from the Danville properties to the extent of $50 per month, provided the properties produced that amount, and that they had done so; that the complainant's claim, being based on a continuing express trust, was not subject to or barred by the statute of limitations or by her laches; that she had not waived nor was she in any way estopped to assert any portion of her claim; that the defendant had failed to prove any agreement, either express or implied, between the complainant and himself by which

he was entitled to offset any amount of money for rent claimed for the use and occupancy of his farm by her and her family; that the complainant was entitled to recover of the defendant the full amount found due by the commissioner ($8,137.17), with interest from the date of the institution of the suit; and that the defendant should promptly pay to the complainant the monthly instalments of $50 each accruing since the institution of the suit so long as the net proceeds from the real estate collected by him were sufficient for that purpose.

From this decree the defendant has appealed.

The first contention of the appellant is that he did not occupy the position of a trustee with respect to his daughter's claim, but that merely the relation of debtor and creditor existed between them, and that, therefore, a large part of her claim for the accumulated instalments of the legacy was barred by the statute of limitations.

Trusts are, as we know, frequently created without the use of technical words. Any words "which unequivocally show an intention that the legal estate was vested in one person, to be held in some manner or for some purpose on behalf of another, if certain as to all other requisites, are sufficient" to create a trust. *Hammond* v. *Ridley's Ex'r*, 116 Va. 393, 398, 82 S. E. 102. See also, *Bare's Ex'rs* v. *Montgomery*, 143 Va. 303, 307, 308, 130 S. E. 230.

The question frequently arises as to whether the relation created is a trust or a debt. With respect to this distinction, in Scott on Trusts, Vol. 1, section 12.1, p. 86, the author says: "A trust involves a duty to deal as fiduciary with some specific property for the benefit of another. A debt involves a merely personal obligation to make payment of a sum of money to another. A creditor as such has merely a personal claim against his debtor. He can enforce his claim by judicial proceedings to reach the debtor's property and subject it to the satisfaction of his claim, but until he does so he has no legal or equitable interest in the property of his debtor. * * * On the other hand, the beneficiary of a trust has an equitable interest in the trust property.

The beneficiary of a trust has something more than a mere chose in action, something more than the merely personal claim which a creditor has against the debtor. He is equitable owner of the trust property. If the trustee transfers the trust property to a person who is not a *bona fide* purchaser, or if the trustee becomes insolvent, the beneficiary is still entitled to the property; and on the other hand if the property is lost or destroyed without the fault of the trustee, the loss falls upon the beneficiary and not upon the trustee.

"There is a fiduciary relation between trustee and beneficiary but not between debtor and creditor as such. * * * "

In determining whether the relation is that of debtor or trustee the intention of the parties, of course, controls. As is said in Restatement of the Law of Trusts, section 12, pp. 42, 43, "If one person pays money to another, it depends upon the manifested intention of the parties whether a trust or a debt is created. If the intention is that the money shall be kept or used as a separate fund for the benefit of the payor or a third person, a trust is created. If the intention is that the person receiving the money shall have the unrestricted use thereof, being liable to pay a similar amount whether with or without interest to the payor or to a third person, a debt is created." See also, *Dunlop Sand, etc., Corp.* v. *Hospelhorn*, 172 Md. 279, 191 A. 701, 706; *Kilgore* v. *State Bank*, 372 Ill. 578, 25 N. E. (2d) 39, 42.

The fact that the trustee may be indebted to the beneficiary in a fixed and definite amount which is due and payable immediately and which may be recovered by the beneficiary in an action at law, is not, as contended by the appellant, determinative of the existing relation. "If the trustee is under a duty to pay money immediately and unconditionally to the beneficiary, the beneficiary can maintain an action at law against the trustee to enforce payment." Restatement of the Law of Trusts, section 198, pp. 522-3. See also, Scott on Trusts, Vol. 2, section 198.1, p. 1072. "This does not mean, however, that a trustee who is under

an immediate and unconditional duty to pay to the beneficiary money held in trust has ceased to be a trustee and has become a debtor." Restatement of the Law of Trusts, section 198, p. 524. See also, Scott on Trusts, Vol. 2, section 198.3, p. 1076.

In Restatement of the Law of Trusts, section 199, p. 527, speaking of the equitable remedies of the beneficiary, it is said: "The beneficiary of a trust can maintain a suit to compel the trustee to perform his duties as trustee. It is immaterial that there is an adequate remedy at law. The beneficiary can in a proper case bring a bill to have the court declare what the duties of the trustees are and to enforce them." See also, Scott on Trusts, Vol. 2, section 199.1, p. 1077; section 198.3, pp. 1075-6; *Peoples Nat. Bank* v. *Coleman,* 175 Va. 483, 485, 9 S. E. (2d) 333, 334.

When these principles are applied to the instrument before us we have no doubt that it was the intent of the testatrix to create an express trust in the rents from the Danville properties in favor of her daughter, the appellee. The language is: "I will the income from my Danville property to my husband except $50 a mo. to Martha Broaddus payable monthly, J. G. Broaddus to keep the property in repairs and taxes paid." Here the husband, the appellant, is bequeathed the entire income from the property, but there is coupled with it the equitable duty, after paying the repairs and taxes, of paying to the daughter out of such income the stated monthly sum. Clearly the intention of the testatrix is that the monthly stipend is to be paid out of the rents. The husband is not given the unrestricted use of the income merely coupled with an obligation to pay the monthly sum. On the contrary, he is to have the income "except $50 a mo. to Martha Broaddus payable monthly".

It follows from what we have said that the testatrix intended that the legacy in favor of her daughter should be a charge on the life estate of her husband, as is pointed out in the cross-assignment of error. He is entrusted with a particular fund, out of which he is directed to pay a particular monthly amount to his daughter. The life estate was the

only property indicated by the will out of which the legacy was to be paid, for at the death of the life tenant the property is to be equally divided between the children of the testatrix. See *Wenner* v. *George*, 129 Va. 615, 620, 106 S. E. 365; *Allen* v. *Patton*, 83 Va. 255, 262, 2 S. E. 143.

It is well settled that so long as there has been no denial or repudiation of an express and continuing trust, such as we have here, neither the statute of limitations nor laches will constitute a bar to an account or other proper relief to which the *cestui que trust* is entitled. *Bargamin* v. *Clarke*, 20 Gratt. (61 Va.) 544, 553-4; *Hammond* v. *Ridley's Ex'r*, *supra* (116 Va. at page 399); *Russell's Ex'rs* v. *Passmore*, 127 Va. 475, 510, 511, 103 S. E. 652.

Here there is no claim or suggestion that the appellant, the trustee, has repudiated the trust or has denied liability thereunder for the payment of the legacy out of the net rents and profits from the Danville real estate. On the contrary, from the time he accepted the obligation until the institution of the present suit he has continuously acknowledged the duty to make the payments required of him by the terms of the will. Therefore, we think the trial court correctly held that no part of the appellee's claim was barred by the statute of limitations or by her delay in instituting suit.

The next contention of the appellant is that he should be allowed a credit against the appellee for the use and occupation by her, her husband, and her children of his farm since October, 1933. Claim to this offset is asserted on two theories, neither of which we think is sound.

First, it is said that the appellant is entitled to the credit on the principle of equitable estoppel. Here the argument is that the appellee knew or should have known that her father was treating the fair rental value of the farm as an offset against her monthly legacy. This view was adopted by the commissioner in chancery but was overturned by the chancellor.

While the appellant testified that he considered that the two claims should be offset, one against the other, there is no evidence whatsoever that there was any agreement to

this effect or that he at any time before the institution of the suit even suggested to his daughter that she should surrender her rights under her mother's will in consideration of the use and occupancy by her and her family of his farm. While he frequently replied in writing to her repeated demands for a settlement, not once did he assert the claim to such an offset. Neither is there any evidence that the appellee, the daughter, by her conduct in any way led her father to believe that she had agreed or would agree to such an offset, or that she had waived or would waive any part of her claim. Indeed, her frequent demands on him indicated that she was insisting on the full amount due her under the will.

Here, again, we think the trial court correctly held that there was no basis upon which to sustain the claim to an offset by way of equitable estoppel.

Next it is said that there was an implied promise on the part of the appellee to pay her father the reasonable value of the use and occupancy of the farm by her, her husband, and her children, which is fixed in the evidence at $50 per month, and that this should be offset against her claim.

It is elementary that one who asserts a setoff must prove his claim. In this State, both at law and in equity, an essential requisite is that the debts must be mutual, that is, they must be owing between the same parties. *Elswick* v. *Combs*, 171 Va. 112, 114, 198 S. E. 501; *Dickenson* v. *Charles*, 173 Va. 393, 399, 4 S. E. (2d) 351, 353. Partnership debts and debts due to individual partners can not be set off against each other. *Edmondson* v. *Thomasson*, 112 Va. 326, 328, 71 S. E. 536, Ann. Cas. 1913A, 1301; *Stowers* v. *Dutton*, 161 Va. 658, 661-662, 171 S. E. 510.

Whether it was the intention of the appellant to make to the appellee and to her family a gift of the use of the farm, as she seems to contend, or that he intended that he should be paid the reasonable value of such use, as he now contends, we need not stop to consider. Assuming that his contention is correct, and that the use and occupancy of the

farm raised or created an implied promise to pay therefor, the evidence falls far short of showing that this obligation rested on the appellee.

It is impossible to determine from the scant evidence on the subject whether the farm was operated by her and her husband, as partners, or by him alone. Her testimony rather tends to show that the operation was a partnership. She said that on the day her father left he told her that "we were to have what we made on the farm"; that "we were to run the place and have what we made." Again, she said that after her father had gone, "Stanley and I looked after and managed the farm."

On the other hand, Gresham, the appellee's husband, testified that since October, 1933, he had operated the farm; that he had received a small income from the property, paid the labor, built the fences, etc. Since Gresham, the husband, was the head of the family, he was the one to whom the appellant would naturally look for the reasonable cost of the rental of the home. Moreover, it is undisputed that after the present suit was instituted the appellant and Gresham met in Richmond and entered into a written lease, under the terms of which Gresham was to pay the rental of $50 per month for the property. This would indicate that the appellant must have realized that his claim for a fair rental value of the farm was against Gresham and not against the appellee.

Certainly there is no basis in the record for a finding that the obligation to pay the fair rental value of the farm rested on her individually, which would be necessary in order that it be allowed as an offset against her claim here.

The decree appealed from will be amended so as to show that the legacy is a charge on the life estate of the appellant in the Danville properties, and as thus amended it will be affirmed.

*Amended and affirmed.*

BROWNING, J., dissenting.

I dissent from the opinion adopted by the majority of my associates. I am aware that a dissent is usually vain, because it serves no practical purpose, however satisfactory it may be to express thoughts lying largely in a sentimental emotion. The flavor of this suit is, to say the least, distasteful. It is the lugging into court of an aged father by his child with a claim for money due to her.

This claim arises out of a provision in the will of Mrs. Broaddus, the mother of the claimant and the wife, now deceased, of the father, against whom the claim is asserted. The will charges the estate of the testatrix with the payment to the claimant of $50 a month up to the death of Mr. Broaddus, the husband of the testatrix and, as we have said, the father of the claimant. The income of her Danville property was left to her husband, subject to the provision referred to. The husband was charged with the duty of keeping the property in repair and paying taxes, etc. The father of the claimant owned a farm in Essex county, Virginia, upon which his wife and his daughter, the complainant, lived until the wife's death and the marriage of the daughter. The wife died in 1922. The daughter married in 1927. Martha Broaddus then became Martha Broaddus Gresham.

Subsequently, indeed, about 1933, a relative, who had charge of the Danville property and had been, in a way, caring for it, died and it became necessary for some one to be concerned about it and to give its care personal attention. This became the duty of Mr. Broaddus, who moved to Danville for that purpose. He found it necessary to expend considerable sums of money to put the property in rentable and profitable shape. He continued to live in Danville, and his married daughter, with her husband, continued to live on his farm in Essex county. This farm was equipped with personal property sufficient for its profitable operation. Most of this property was of such a nature as to deteriorate with use and become less valuable with age. All of this, including a pair of mules and an automobile, was used without restraint by Mrs. Gresham and her husband. Their two children were born there and, at the time of the entry of

the decrees in this suit, they had reached the ages of 11 and 9 years.

During this period Mr. Broaddus sent sums of money to his son-in-law, Mr. Gresham, aggregating $1,511.14, besides a number of payments to his daughter on account of the $50 a month legacy. He became largely in arrears, however, in the payment in full to date of this legacy. He explained this by saying that he expected the occupancy of the farm by his daughter and her family would offset it. As evidence of the fact that $50 per month for the use of his Essex property was a reasonable charge, Mr. Gresham entered into an agreement with him after the controversy arose between himself and his daughter to pay that amount for it. She instituted suit to recover from her father the amount which she claimed and the trial court gave her a judgment for $8,137.17, which, in effect, was affirmed by the majority opinion of this court.

The commissioner in chancery, to whom the cause was referred, in his report made this statement: "It would be inequitable and unconscionable for Mrs. Gresham and her family not to account to Mr. Broaddus for the use and occupancy of Glencairn (the name of the Essex county home) from October, 1933, to June, 1941, under the circumstances of this case."

His report also contains this apt expression: "The equitable principle of 'he who seeks equity must do equity' should be applied. * * * . Mrs. Gresham in asserting her claim against Mr. Broaddus should be required to account for the benefits which she has received from him in the use and enjoyment of the farm."

I am in hearty accord with the findings of the commissioner and with the expressions employed by him, which seem to me to be so in harmony with equity and good conscience.