# CIRCUIT COURT OF FREDERICK COUNTY

Lake Holiday
Country Club, Inc.

    v.

Edward W. Teets

               Case No. (Law) 00-44

Lake Holiday
Country Club, Inc.

    v.

James B. Winn

               Case No. (Law) 00-46

Lake Holiday
Country Club, Inc.

    v.

A. Michael Krakow

               Case No. (Law) 00-47

Lake Holiday
Country Club, Inc.

    v.

Marjorie VanGraafeiland

               Case No. (Law) 00-70

April 5, 2001

BY JUDGE JOHN E. WETSEL, JR.

This case came before the Court on February 23, 2001, and again on March 29, 2001, on the Plaintiff's Motions for Summary Judgment and the Defendants' Pleas of Statutory Recoupment to the Plaintiff's right to collect homeowners' association dues. The Defendants' recoupment pleas are based on alleged acts and breaches of the seller-developer which occurred more than twenty-five years ago, arising from real estate transactions in which the homeowners' association was not involved and which are not based on any act of the homeowners' association. James V. Ingold, Esquire, appeared for the plaintiff, and Mary Lou Daniel, Esquire, appeared for the Defendants.

Upon consideration and despite the ingenious arguments of the Defendants, the Court has decided to deny the Pleas of Statutory Recoupment, because the homeowners' association was not a party or a privy to the real estate purchase transaction upon which the recoupment pleas are premised. While the present recoupment statute, Virginia Code § 8.01-422, is very broad, there are limits to its application, and it may not be asserted as a defense when the plaintiff was not a party to the transaction on which the defense is premised and does not have direct contractual privity with any party to that transaction.

## I. Findings of Fact

The following material facts are not in dispute.

Lake Holiday is a large, residential, recreational development built around a lake in western Frederick County Virginia. It was initially built and developed by Lake Holiday Associates in the early 1970's.

In 1973, Lake Holiday Country Club, a Virginia nonstock corporation, which is the property owners' association for the Lake Holiday development,

was formed to maintain the common areas at Lake Holiday and to enforce the rules and regulations governing the use of that common area, which now includes roads, recreational facilities, such as the lake, beaches, piers, walking trails, tennis courts, and a basketball court. Lake Holiday Country Club has the authority to set the amount of the annual dues, and from time to time those assessments have been changed. Lake Holiday Country Club, Inc., is a property owners association within the purview of the Virginia Property Owners Association Act, Virginia Code § 55-508 *et seq*. The corporation's Articles of Incorporation expressly state that it is empowered to "fix, levy, collect, and enforce payment of, by any lawful means, all charges or assessments made or imposed pursuant to the provisions of said Declaration . . ." which in this case was the 1971 Deed of Dedication.

As is fairly typical of such large, recreational developments, the developers of Lake Holiday placed restrictive covenants on the Lake Holiday subdivision which require all lot owners to be members of the Lake Holiday Country Club, which is the Lake Holiday property owners' association. The Deed of Dedication dated November 8, 1971, which was recorded before the Defendants purchased their lot, applies to the Defendants' lots, and it provides in pertinent part:

> 19. Membership in Lake Holiday Country Club is mandatory for all persons owing property in Lake Holiday Estates, and no person shall acquire title until he has been approved for membership in Lake Holiday Country Club. . . .
>
> 31. Each lot owner is obligated to become a member of Lake Holiday Country Club and to pay when due the annual assessment to be levied upon each lot owner to defray the cost of maintenance of roads and the other amenities maintained by the Country Club.

Paragraph 32 of the restrictive covenants provides that the Country Club has several cumulative remedies against the lot owner for nonpayment which include actions at law like the present actions.

On July 23, 1973, the Defendant Teets purchased a lot in Lake Holiday, and that lot is subject to the restrictive covenants in question, but he argues that it is not fair to make them pay their homeowners' association dues because promises made to them by the original developers were not kept, that the Lake Holiday Country Club does not have the authority to enforce the collection of the dues against them, and that they are not members of the Lake Holiday Country Club.

On July 25, 1973, the Defendant Winn purchased a lot in Lake Holiday, and that lot is subject to the restrictive covenants in question, but he argues that it is not fair to make them pay their homeowners' association dues because promises made to them by the original developers were not kept, that the Lake Holiday Country Club does not have the authority to enforce the collection of the dues against them, and that they are not members of the Lake Holiday Country Club.

On April 22, 1973, the Defendant Krakow purchased a lot in Lake Holiday, and that lot is subject to the restrictive covenants in question, but he argues that it is not fair to make them pay their homeowners' association dues because promises made to them by the original developers were not kept, that the Lake Holiday Country Club does not have the authority to enforce the collection of the dues against them, and that they are not members of the Lake Holiday Country Club.

On October 17, 1974, the Defendant VanGraafeiland purchased a lot in Lake Holiday, and that lot is subject to the restrictive covenants in question, but she argues that it is not fair to make them pay their homeowners' association dues because promises made to them by the original developers were not kept, that the Lake Holiday Country Club does not have the authority to enforce the collection of the dues against them, and that they are not members of the Lake Holiday Country Club.

There were problems with the management of Lake Holiday Country Club, Inc., and in August 1998, in the Frederick County Chancery suit of *Bloomingdale v. Lake Holiday Country Club*, Chancery No. 98-64, the officers and directors of Lake Holiday Country Club were removed by order of this Court, and the powers formerly vested in the corporation's board of directors and officers devolved upon the special commissioner appointed by the Court to manage the corporation pending the election of a new board and officers, which elections were conducted in December 1998.

In 1998, Lake Holiday Country Club had a two-tiered membership assessment. The development has a small central sewer and water system, and those lots with sewer and water availability have been assessed higher dues than those lots without sewer and water availability. In 1998 lots without sewer and water, like those of the Defendants, were assessed $275.00 per year. In August 1998, after the appointment of the special commissioner, this Court imposed special assessments incident to the supervision of the corporation by the Court, which were $148 in 1998 for lots without sewer and water and $228 for lots with sewer and water. These assessments were imposed to meet the financial needs of the corporation, which, at that time, bordered on bankruptcy. In 2000, lots with sewer and water were assessed dues of $600,

whereas those without sewer and water availability were still assessed $275, which assessment rates have been promulgated by the new board of directors of the corporation.

When the Defendants purchased their lots in the 1970's, their lots did not have water and sewer. The Defendants allege that many promises about the construction of future improvements in the Lake Holiday development were made to the Defendants by agents of the developer, which the Defendants claim induced them to buy their lots.

No evidence was produced to prove that Lake Holiday Country Club was contractually bound to provide the Defendants with the sewer and water service or to construct the various amenities which the Defendants claim were promised. Lake Holiday Estates Utilities, Inc., is a separate corporation from the Country Club, which the developer created to own and manage the small central sewer and water system which serves the Lake Holiday development.

## II. *Conclusions of Law*

As the Supreme Court observed in *Sully Station II Community Ass'n, Inc. v. Dye*, 259 Va. 282, 284, 525 S.E.2d 555 (2000):

> [T]he Declaration [of covenants]. . . . "collectively represent[s] a contract entered into by all owners" of townhouses in Section 8 of Sully Station II. *See Unit Owners Ass'n v. Gillman*, 223 Va. 752, 766, 292 S.E.2d 378, 385 (1982). As with other contracts, effect must be given to the intention of the parties. *Foti v. Cook*, 220 Va. 800, 805, 263 S.E.2d 430, 433 (1980).

Given the character of the Lake Holiday development and the statements set forth in the deed of dedication, there is no question but that the developers had a common scheme of development for Lake Holiday and that this general plan was to preserve the residential character of the development, which was the express purpose of the original restrictions in the 1971 deed of dedication and which restrictions were later referred to by reference in out conveyances like the Defendants' deeds.

Only persons approved for membership in Lake Holiday Country Club could receive title to a lot; so, implicit in the conveyances of the lots to the Defendants is the fact that they were approved as members of the Lake Holiday Country Club. The restrictive covenants clearly provided that:

19. Membership in Lake Holiday Country Club is mandatory for all persons owing property in Lake Holiday Estates, and no person shall acquire title until he has been approved for membership in Lake Holiday Country Club. . . .

31. Each lot owner is obligated to become a member of Lake Holiday Country Club and to pay when due the annual assessment to be levied upon each lot owner to defray the cost of maintenance of roads and the other amenities maintained by the Country Club.

As the Supreme Court stated in *Sonoma Development v. Miller*, 258 Va. 163, 167, 515 S.E.2d 577 (1999):

To enforce a real covenant in Virginia, a party must prove the following elements: (1) privity between the original parties to the covenant (horizontal privity); (2) privity between the original parties and their successors in interest (vertical privity); (3) an intent by the original covenanting parties that the benefits and burdens of the covenant will run with the land; (4) that the covenant "touches and concerns" the land; and (5) the covenant must be in writing. *Sloan*, 254 Va. at 276, 491 S.E.2d at 728.

The fact that the homeowners' association is the "successor in interest" to the developer with respect to the right of the homeowner's association to enforce the payment of the dues does not mean that the homeowners' association is liable for the alleged torts or contract breaches of the developer. This assignment or succession in rights arises from a different transaction and not from the various real estate purchase transactions involving the various Defendants. "[I]t is well settled, as a general proposition and apart from the ratification by the corporation, that the representations or acts of an officer, agent, or employee of a corporation neither bind it nor create liability against it, unless the agent was acting within the scope of his authority or employment." 18B Am. Jur. 2d, *Corporations*, § 2125. In this case, it is not contended that the offending acts were committed by agents or employees of the homeowners' association, and no case has been cited by the homeowners' association in support of their contention that defaults of the developer in its contract with the lot owner could be asserted as a shield to the homeowners association's right to collect dues.

The property owners' association is not a general assignee of all the rights and obligations of the developer seller under the various real estate purchase contracts at issue in these cases, so for the purposes of those real estate sale

transactions, the property owners' association does not stand in the shoes of the developer. *See Union Recovery, L.P. v. Horton*, 252 Va. 418, 423, 477 S.E.2d 521 (1996) (assignee "stands in the shoes" of the assignor of the instrument assigned). There has been a limited assignment of the developer's right to enforce the restrictive covenants, but this arises from a separate transaction between the developer and the property owners' association. Therefore, there is no contractual privity between the homeowners' association and the developer seller *vis a vis* the real estate sales transaction between the seller developer and the lot purchasers. In the absence of contractual privity, a person cannot be held liable for economic loss damages caused by his breach of contract. *Gerald M. Moore & Son v. Drewry*, 251 Va. 277, 467 S.E.2d 811 (1996); and *Fisher v. Baurer*, 246 Va. 490, 436 S.E.2d 602 (1993).

The major issue to be presently decided is the extent to which the Defendants may rely upon a defense of statutory recoupment where the plaintiff was not a party to the transaction on which the defense is premised and does have direct contractual privity with any party to that transaction. "As a general rule, limitation statutes are not applicable to defenses, but apply only where affirmative relief is sought." 51 Am. Jur. 2d, *Limitations of Actions*, § 76. Therefore, "a defense of recoupment is not barred by the statute of limitations so long as the main action out of which the claim arose is timely filed." *City of Richmond v. Tel. Co.*, 205 Va. 919, 926 (1965); *accord Cummings v. Fulghum*, 261 Va. 73 (2001).

In contrast to recoupment, which is a defense, setoff and counterclaims are affirmative claims. "In the absence of a statute to the contrary, a demand pleaded by way of set off, counterclaim, or cross-claim is regarded as an affirmative action in most jurisdictions and, therefore, unlike a matter of pure defense, is subject to the operation of the statute of limitations, and is unavailable if barred [at the commencement of the initial action]." 51 Am. Jur. 2d, *Limitations of Actions*, § 78.

While this case was pending the Supreme Court decided *Cummings v. Fulghum*, 261 Va. 73 (2001), and the parties were asked to discuss its potential application to this case. In *Cummings*, the Supreme Court ruled that a plea of the statute of limitations did not apply to a defense of statutory recoupment as contrasted to a counterclaim or cross-claim which is deemed to be filed at the time such pleading is filed. Virginia Code § 8.01-233. In reaching its decision, the Supreme Court analyzed the history of the statutory recoupment statute, Virginia Code § 8.01-422. While the *Cummings* holding is clear, the transactional facts to which the holding was applied were not extensively discussed, and those transaction facts suggest that as a precedent,

*Cummings* is strictly limited to its broad holding, because its facts leave many questions unanswered. For example, Fulghum was the assignee of a deed of trust note, who sued Cummings for payment of the note, and Cummings filed a defense of statutory recoupment claiming that the owner-builder who had sold Cummings her lot and constructed improvements on it had breached the purchase construction agreement. Nothing in the case suggests that Fulghum was *in pari delicto* with the owner-builder who had assigned the Cummings note to Fulghum. If Fulghum was a holder in due course, the defenses, which Cummings asserted to the note's collection based on breaches of the construction contract between the owner-builder, who assigned its note to Fulghum, and Cummings are personal defenses which may not be asserted against a holder in due course. *See* Virginia Code § 8.3-305(2) (the holder "takes the instrument free from all defenses of any party to the instrument with whom the holder has not dealt. . . ."). Regardless of the substantive merits of Cummings' defense, that defense could theoretically be asserted against Fulghum despite the statute of limitations, because Fulghum has direct privity (vertical privity) with the owner-builder who was a party to the transaction on with the defense was premised; therefore, Fulghum stood in the shoes of the owner developer.

In *City of Richmond v. C. & P. Tel. Co.*, 205 Va. 919, 925-26, 140 S.E.2d 683 (1965), the Supreme Court discussed the fundamental nature of recoupment and stated:

> The elements of common law recoupment in Virginia are set out in *Burks' Pleading and Practice*, 4th ed., § 249, p. 447. Recoupment must arise out of the same transaction; the amount need not be liquidated; there can be no recovery over; the right to recoupment must be shown by a plea in the general issue, or *nil debet*, or *non assumpsit*; it cannot be used against a sealed instrument; and purely equitable defenses cannot be set up. See also *Dexter-Portland Co. v. Acme Co.*, 147 Va. 758, 766, 133 S.E. 788, 790. *Cf.*, Statutory Recoupment, § 8-241, Code of 1950, 1957 Repl. Vol. . . .
>
> A defense of recoupment is not barred by the statute of limitations so long as the main action out of which the claim arose is timely.

Nothing in Virginia § 8.01-422 or the *Cummings* decision suggests that the fundamental defensive character of recoupment, which distinguishes it from the offensive pleading of setoff or a counterclaim, has been changed. The statute still confines the defense to apply "against the obligation of the

contract" sought to be enforced, and this language and concept has not changed from the earlier recoupment statute. *See Cummings v. Fulghum, supra.* Therefore, the rule "[i]n this State, both at law and in equity, [that] an essential requisite [of recoupment] is that the debts must be mutual, that is, they must be owing between the same parties," *Broaddus v. Gresham,* 181 Va. 725, 735, 26 S.E.2d 33 (1943), has not been abrogated. This concept of mutuality of obligation is the litmus requirement for the application of the defense of recoupment. "Recoupment must arise out of the same transaction." *Richmond v. Tel. Co.,* 205 Va. 919, 925 (1965); *see generally* 20 Am. Jur. 2d, *Counterclaim, Recoupment, etc.,* §§ 32-33. The requirement that the obligations all flow from the same transaction is the foundation for the equitable conclusion that it is fair to consider everything that transpired between the parties with respect to their respective obligations to the original transaction even though the statute of limitations may have run on any offensive pleadings which the defendant could potentially file. This mutuality concept is a legal synonym for the concept that there must be horizonal privity between the original parties, which is lacking in the pending cases, and vertical privity with respect to that transaction between the parties to the current action, which is also lacking in these cases. The defense of statutory recoupment is limited to rights of action arising from an earlier transaction between the parties, or, as in the case of *Cummings v. Fulghum, supra,* privies of the original parties *vis a vis* that transaction, because statutory recoupment cannot be asserted against a party who was a stranger to the original transaction or who does not stand in direct contractual privity with the parties to the original transaction with respect to the particular transaction at issue.

The case of *Sonoma Devel. v. Miller,* 258 Va. 163, 168-69, 515 S.E.2d 577 (1999), is instructive both as to the right to enforce restrictive covenants and as to the scope of the transaction in a real estate purchase:

> The term "transaction" is defined as "an act or agreement, or several acts or agreements having some connection with each other, in which more than one person is concerned, and by which the legal relations of such persons between themselves are altered." Black's Law Dictionary 1496 (6th ed. 1990); *cf. Virginia Housing Dev. Auth. v. Fox Run, Ltd. Partnership,* 255 Va. 356, 364-65, 497 S.E.2d 747, 752 (1998) (quoting *Richmond Postal Credit Union v. Booker,* 170 Va. 129, 134, 195 S.E. 663, 665 (1938)) ("Notes and contemp- oraneous written agreements executed as part of the same transaction will be construed together as forming one contract."). In the context of the present case, we find that the transaction of which the covenant

was a part commenced with the real estate contract between the Schaers and the Millers, and culminated with the deed conveying Lot 38 to the Millers. The "Declaration of Restriction" fulfilled the Schaers' contractual obligation to establish a restriction on Lot 39, which lot was being retained by the Schaers at that time, and was executed in conjunction with the deed to the Millers. Thus, it was part of a transaction that included the transfer of an interest in the land benefitted by the real covenant.

There is a critical distinction between the transaction in *Sonoma* and those of the pending cases, because in *Sonoma* the declaration of restriction and the deed of conveyance were executed on the same day as part of the same transaction. In the pending cases, the deed of dedication was recorded as part of a separate, unrelated transaction which occurred before any of the Defendants entered their negotiations with the developer for the purchase of their lots.

The Virginia Supreme Court applies the same transactional analysis in considering the scope of a transaction for the application of res judicata or to determine the accrual of the right of action for the purposes of the statute of limitations as it did in *Sonoma, supra*. In *Trout v. Commonwealth Transp. Commissioner*, 241 Va. 69, 73, 400 S.E.2d 172 (1991), the Supreme Court discussed this broad transactional concept:

> An "action" and a "cause of action" are quite different. "Action" is defined by Code § 8.01-2, as noted above. We define "cause of action" in *Roller v. Basic Construction Co.*, 238 Va. 321, 327, 384 S.E.2d 323, 326 (1989), as "a set of operative facts which under the substantive law, may give rise to a right of action."

Virginia follows the transaction rule set forth in the Restatement of Judgments 2d, § 24, for purposes of defining "cause of action." One "cause of action" may give rise to myriad rights of action, e.g., breach of contract, breach of warranty, negligence, and statutory claims; however, if the rights of action arise from the same operative set of facts and could legally be asserted therein, they are all the same "cause of action" for purposes of the application of the doctrine of *res judicata. Compare Brown v. Haley*, 233 Va. 210, 355 S.E.2d 563 (1987) (equitable claim for easement arose from different transaction and could not be asserted in earlier ejectment action at law between the same parties).

Applying the transaction rule set forth in *Sonoma Development v. Miller*, 258 Va. 163, 168-69, 515 S.E.2d 577 (1999), that the transaction between the developer and the lot purchasers, which is the basis of the plea of recoupment, "commenced with the real estate contract between the [the lot owner and the developer] . . . and culminated with the deed conveying [the lot from the developer to the lot owner]," the deed of dedication and the assumption by the Lake Holiday Country Club of the right to enforce the covenant to pay the dues were not part of the transaction between the lot owners and the developer. Nor is the Country Club the assignee of the alleged contract between the developer and the lot owner to construct the roads and extend the sewer system, which was allegedly a part of the purchase contracts between the developer-seller and the Defendants.

In this case, any fraud or breach of contract allegedly committed was committed by the developer not by the property owners' association. Fraud in the inducement of a contract is a tort action, which arises from the relationship between the parties before the formation of the contract, so any alleged fraud in the inducement which may have occurred arose from a transaction independent of the obligation to pay homeowners' dues which is at issue in this case. In this case, the alleged misrepresentations predate the contract, so the source of the duty owed to the prospective purchaser did not derive from the contract between them. *See Richmond Met. Auth. v. McDevitt Street Bovis, Inc.*, 256 Va. 553, 507 S.E.2d 344 (1998) (duty to submit accurate payment application arises from the construction contract and breach of that duty is not fraud).

The property owners' association is a separate corporation from the developer. While the property owner's association is the successor in interest to the developer in terms of legal title to some of its property, it is not the legal successor in interest in terms of its potential legal liability for the transgressions of the developer, real or imagined. Therefore, recoupment is not available as a defense to the collection of the dues by the homeowners' association in this case, because the only grounds asserted for these defenses in this case are the transactions between the developer and the Defendants.

While equitable defenses may be asserted to a contract action, Virginia Code § 8.01-422, any fraud allegedly committed in this case was committed by the developer not by the property owners' association. Moreover, it is too late to file any affirmative right of action based on fraud in the inducement of the contract to purchase, because, Virginia Code § 8.01-243(C)(2) provides that a fraud action shall be brought within two years of the date of discovery of the fraud or within two years of the time that the fraud should have been discovered "by the exercise of due diligence." Section 8.01-249 provides that

a fraud action accrues upon discovery of the fraud or "when such fraud . . . by the due diligence reasonably should have been discovered." Certainly, five years would be a reasonable time for the Defendants to determine that the amenities promised to them by the developer were not going to be built as promised, which means that by at least 1979, they should have discovered the developer's breach of promise, which is more than twenty years ago, so the statute of limitations has long since run on any affirmative right of action against the developer that these Defendants would have based on the promises made to them when they purchased their lots.

Fraud is a tort that arises from the relationship between the parties and not from their contract. *See Yuzefovsky v. St. John's Wood Apts.*, 261 Va. 97, 112 (1999). Assuming that the sales agents were agents of the developer who made fraudulent statements to induce the respective purchases at issue, there is still no basis to impose vicarious liability on the homeowners' association for the alleged frauds of the developer or its agents. While even the innocent principal may be held liable for the fraud of his agent committed with the course and scope of his employment, *Nationwide Ins. Co. v. Patterson*, 229 Va. 627, 632, 331 S.E.2d 490 (1985), the homeowners' association was not the sales agents' principal, and an innocent third party like the homeowners' association cannot be held liable for the frauds of another person or those of a separate corporation.

Property owners' associations are a common vehicle for the management of large properties, such as Lake Holiday, which have common areas created for the benefit of all the owners. In recognition of their widespread use, the General Assembly enacted the Virginia Property Owners' Association Act. Virginia Code § 55-508 *et seq*. Implicit in the Property Owners' Association Act is the General Assembly's concern for the prompt collection of the property owners' assessments. *See* Virginia Code § 55-516. It is fairly customary for a developer to build his project, market it, create a property owners' association, and then turn the management of the common areas over to the property owners' association as was done in this case. In such instances, the individual lot owners may have legal claims against the developer, but these claims may not generally be offset against the assessments of the property owners' association. In *Panther Lake Homeowner's v. Juergensen*, 887 P.2d 465, 468 (Wash. App. Div. 1 1995), the Washington State Court of Appeals ruled:

We . . . hold that defects in the Association's capital improvements do not provide members with a defense to assessments imposed to pay for such improvements. . . . Any dispute over defects in construction

of Association property was between the association and the developers or contractors. . . . Lot Owner's remedies are limited to making their wishes known to the Association, casting their votes, and seeking declaratory relief if the Association acts beyond its authority. Lot Owners are not permitted to compound the Association's problems by unilaterally withholding assessments for capital improvements.

*See also Blood v. Edgar's, Inc.*, 632 N.E.2d 419 (Mass. App. Ct. 1994); *Forest Villas Condo Ass'n v. Camerio*, 422 S.E.2d 884 (Ga. App. 1992); *Rivers Edge Condo Ass'n v. Rere, Inc.*, 568 A.2d 261 (Pa. Super. 1990); and *Newport West Condo Ass'n v. Veniar*, 350 N.W.2d 818 (Mich. Ct. App. 1984). While Virginia's recoupment statute may be unique to Virginia, the cases from other jurisdiction are instructive on the principle the lack of transaction privity is fatal to the lot owners' defense based on the developer's breaches and torts, when asserted against the property owners' association's action to collect dues and assessments.

More than twenty-five years after they purchased their lots, the Defendants claim that they did not get what they bargained for, yet they never sued to rescind their contract or deed. While the court is naturally sympathetic to the Defendant's alleged plight, which has a strong equitable attraction, a court may not allow sympathy to supplant the law. As the Supreme Court stated in *McLeskey v. Ocean Park Investors*, 242 Va. 51, 55 (1991):

When a ground for rescission is discovered, prompt action is necessary. If a party, after discovering facts which would justify rescission, continues to treat the contract as a subsisting obligation, leading the other party to believe that it is still in effect, the right to rescind is waived.

The Defendants' major complaint is that they did not get the water and sewer to their lot that they were promised when they purchased their lots in the 1970's. If purely equitable matters were to be considered, these Defendants did not pay dues for over 25 years. Whether the Defendants' lots will ever be provided with sewer and water within the foreseeable future is highly problematic. The Defendants' argument that if they were able to convey their lots to the plaintiff free of encumbrances, that they should then be released from all further obligations, while both a reasonable and equitable proposal, is beyond the power of this court to implement in these present actions.

There is no question but that there were irregularities in the former management of the property owners' association, and that is one of the reasons that the Court removed the officers and directors of the association in August 1998. However, as stated in 18B Am. Jur. 2d, *Corporations*:

> Persons informally or irregularly elected to a corporate office who exercise the functions of the office are *de facto* officers. Thus, where the stockholders of a corporation proceed by an informal or irregular exercise of an existing power of election to elect certain officers, the persons so elected are, until removed, regarded as *de facto* officers. [§ 1415]

> The *de facto* doctrine is one of those legal makeshifts by which unlawful or irregular corporate . . . acts are legalized for certain purposes due to necessity. . . . The acts of *de facto* officers or directors are also binding as between the corporation and its stockholders or members. [§ 1417]

When a receiver or special commissioner is appointed by a court to manage the affairs of a corporation, as was done with the Lake Holiday Country Club in 1998, the receiver or special commissioner "represents the court appointing him, and he is the medium through which the court acts." 66 Am. Jur. 2d, *Receivers*, § 136. Moreover, Virginia Code § 55-514 specifically provides that "the board of directors of an association [of property owners] shall have the power to levy a special assessment against its members if the purpose in so doing is found by the board to be in the best interests of the association. . . ." "The receiver of a corporation may, with the permission of the court, do anything which the corporation might lawfully have done to make the most of its assets." 66 Am. Jur. 2d, *Receivers*, § 201. The special assessments which this Court imposed upon the lot owners has the same effect as an assessment promulgated by the corporation's board of directors, and it must be paid by the lot owners.

The assessments existing when the Court removed the officers and directors in 1998 were continued, and those assessments were earlier set by the officers and directors of the property owners' association and are enforceable against the lot owners. Since this is a motion for summary judgment, technically it may remain to be proven as to the status of the dues assessments prior to the Court's appointment of the special commissioner on August 26, 1998; thereafter, there is no question but that the lot owners are liable for the payment of the dues.

## III. *Decision*

For the foregoing reasons, it is adjudged and ordered that:

1. Defendants' Pleas of Statutory Recoupment based on breaches of contract by the original developer and the alleged fraud of the developer seller are denied.

2. Plaintiff's Motion for Summary Judgment is granted as to all dues and assessments accruing since August 26, 1998, but the Plaintiff's Motion for Summary Judgment is denied with respect to dues and assessments arising before August 26, 1998, because further factual development is required with respect to that issue.